MICHIGAN BELL TELEPHONE COMPANY *v.* INGHAM
CIRCUIT JUDGE.

1. TELEGRAPHS AND TELEPHONES—RATE-FIXING PROCEEDINGS—STAT-
UTES.
    Rate-making proceedings relating to telephone companies be-
        fore the public service commission and review thereof by
        the circuit court are purely statutory and are designed to
        accomplish speedy final determination of issues involved
        (CL 1948, §§ 484.112–484.116).

2. SAME—CONFISCATORY RATES—COURTS.
    The circuit court is vested with the general equity jurisdiction
        to protect a telephone company from confiscatory rates being
        fixed by the public service commission (CL 1948, §§ 484.112–
        484.116).

3. SAME—CONFISCATORY RATES.
    A rate order as to a telephone company, which is confiscatory
        is an unreasonable order and cannot be sustained.

4. SAME—RATES—ORDER OF COMMISSION.
    On matters involving the exercise of good common sense and
        judgment only, the determination of the public service
        commission must be held to be final unless such determi-
        nation in its application results in the establishment by
        clear and convincing proof of a telephone rate so low as to
        be confiscatory or so high as to be oppressive.

5. SAME—PETITION TO REOPEN PROOFS IN RATE-FIXING PROCEEDINGS
    —DUE PROCESS.
    Where telephone rate proceedings were instituted in October,
        1944, an order was made by the public service commission
        in December, 1945, court review·thereof was sought by the

REFERENCES FOR POINTS IN HEADNOTES
[3–5] 52 Am Jur, Telegraphs and Telephones, § 56 *et seq.*
[6] 34, 35 Am Jur, Mandamus, §§ 40, 41, 258.
[7] 14 Am Jur, Costs, §§ 21, 91.

company in January, 1946, because of claimed confiscatory rate, amplified record ordered returned by circuit judge to commission in July, 1946, and commission completed its reconsideration in February, 1947, and then filed a modified order with the circuit court, denial of telephone company's supplementary motion to reopen proofs, made in May, 1948, was not a deprivation of due process of law in view of statutory provisions designed to give a speedy final determination in proceedings to fix telephone rates (CL 1948, §§ 484.112–484.116).

6. Mandamus—Discretionary Writ.

One seeking a writ of mandamus must abide by the rules relating thereto, namely, that it is a writ of discretion and not of right; does not lie to review the exercise of judicial discretion; and is not granted to work an injustice.

7. Costs—Public Question—Reopening of Proofs in Telephone Rate-Fixing Proceedings.

No costs are awarded on denial of telephone company's petition for writ of mandamus to compel circuit judge to set aside order denying motions to reopen and take further testimony some two and a half years after rate-fixing proceedings had been instituted, an issue primarily of public importance being involved.

Mandamus by Michigan Bell Telephone Company, a corporation, against Marvin J. Salmon, Ingham Circuit Judge, to compel the setting aside of an order. Submitted April 12, 1949. (Calendar No. 44,-342.) Writ denied June 29, 1949.

*Thomas G. Long, Karl F. Oehler, James Morgan Smith,* and *Jack H. Shuler,* for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *G. Douglas Clapperton,* Assistants Attorney General, for the defendant.

North, J.   Plaintiff herein seeks mandamus in this Court to compel Ingham county circuit judge, Marvin J. Salmon, to vacate his order of November

3, 1948, whereby plaintiff's motions to reopen and take further testimony were denied in a proceeding wherein the Michigan public service commission had made a rate-fixing order on December 13, 1945. We will herein refer to plaintiff, Michigan Bell Telephone Company, as the company, and to the Michigan public service commission as the commission. To aid in presenting the factual background we note in chronological order the following phases of this proceeding.

October 3, 1944—Rate proceeding instituted.

December 13, 1945—The commission made an order reducing and fixing rates to be charged for certain telephone service, effective December 31, 1945.

January 11, 1946—The company filed a bill of complaint in this proceeding in Ingham county circuit court, alleging in substance that the commission's order of December 13th was confiscatory.

February 1, 1946—The company obtained a temporary injunction against enforcement of the rates fixed by the December 13th order, but conditioned that the amount collected by the telephone company in excess of the December 13th rate order should be kept in reserve by the company to abide final decision. By October, 1948, this amount had accrued to $10,500,000.

July 9, 1946—Issue having been framed and hearing completed, the Ingham county circuit judge, Paul G. Eger, ordered that the amplified record completed before him be transmitted to the commission, as provided by statute (CL 1929, § 11715 * [Stat Ann § 22.1456]).

February 14, 1947—The commission having completed its reconsideration in the light of the amplified record, filed with the circuit court its report and determination whereby the telephone company

---

.  * CL 1948, § 484.116.—Reporter.

was relieved to the extent of approximately 25 per cent. of the reduction in its service charges as provided in the December 13, 1945, order. The result of the foregoing brought the case again before the circuit court, but the issue was the validity of the commission's order as modified, instead of its order of December 13, 1945.

April 1, 1947—The company filed in the circuit court proceeding a motion to reopen the case and take further testimony. This motion was disposed of by a stipulation in open court that, as sought in the motion, there should be considered in evidence monthly reports of the company to the commission from June to December, 1946, inclusive, and also the affidavit of Ferry B. Allen which was filed in support of the motion.

July 7, 1947—The company again made a motion to reopen the proofs, but before hearing this motion Judge Eger died, July 19, 1947. Months passed with no action by either party.

May 5, 1948—The company made a so-called supplementary motion to reopen the proofs, the case having now been assigned to Circuit Judge Salmon.

November 3, 1948—After prior hearing (incident to which the city of Detroit as an intervenor filed a brief in opposition to this latter motion) the circuit judge denied plaintiff's motions of July 7, 1947, and May 5, 1948, to reopen the case for further testimony.

December 31, 1948—The company filed in this Court a petition for mandamus to compel Judge Salmon to vacate his order denying the company's motions to reopen the proofs. Plaintiff's petition for mandamus was opposed by the circuit judge, represented by the attorney general. Thus the issue here presented is this: Should this Court grant mandamus as prayed?

In addition to the foregoing there should be noted the following facts and circumstances incident to the development of this prolonged litigation. Subsequently to February 14, 1947, when the commission's modified rate order was transmitted to the circuit court and subsequently to April 1, 1947, when the company filed its first petition to reopen the proofs but before the hearing on April 24th of this motion, which matter was disposed of by stipulation, the company experienced a strike of its employees starting in April, 1947, and settled May 20th, following. In support of the company's July 7, 1947, motion to reopen the proofs a showing was made that its cost of operation by reason of increase of wages resulting from the strike would be approximately $5,500,000 per year. But comparatively soon after the settlement of the strike the company, on August 27, 1947, filed with the commission a petition for approval of increased rates. This matter was heard by the commission and on October 14, 1948, the commission by its order granted the company an increase of rates "designed to increase its revenues (probably annually) approximately $8,217,000."

It is somewhat important to note that on April 24, 1947, at the hearing of the company's first motion filed April 1, 1947, to reopen proofs, in stipulating to supplementing the record as hereinbefore noted, attorney Williams, representing the defendant commission, stated:

"It is my understanding that if the record is so expanded, it will not be necessary for it to be returned to the commission, but that we will then be in a position to go forward with this court's decision upon the merits of this controversy."

In response to the above the attorney representing the company stated to the court: "I am in agreement with Mr. Williams' statement." From the

foregoing it appears that as of April 24, 1947, by agreement of both litigants this matter, except filing briefs, was fully submitted to the circuit court. The two motions to reopen proofs denied by Judge Salmon were made subsequently; and decision in this mandamus proceeding turns upon whether in denying these motions the circuit judge was guilty of an abuse of discretion or otherwise in error.

In this type of cases the procedure before the commission and thereafter in the circuit court is purely statutory. CL 1929, §§ 11711–11715 * (Stat Ann §§ 22.1452–22.1456). It is too plain even to justify comment that this procedure is designed to accomplish speedy final determination of issues of the character here involved.† Obviously that is of prime importance and quite indispensable to fair and effective regulation of rates to be charged by public utilities. This phase of the applicable law must be kept in mind in reaching decision herein. If the circuit judge had ruled otherwise than he did in the instant case, the result would have been the taking of additional testimony, and thereafter in compliance with the statutory provisions the circuit judge would have transmitted the record back to the commission for further consideration. The result would have been that the instant case would be in substantially the same status, so far as final decision is concerned, as it was when the original proceedings were started in October, 1944, or when plaintiff's rates were first ordered reduced in December, 1945. Procedure which would result in such delay should be avoided if possible to do so without violating the rights of an interested party.

In the instant case plaintiff's contention is indicated by the following, quoted from its brief:

---

* CL 1948, §§ 484.112–484.116.—Reporter.

† See sections 14 and 16 of the cited act (PA 1913, No 206 [CL 1948, §§ 484.114, 484.116]).

"Procedural due process under the Fourteenth Amendment to the United States Constitution requires that in a case brought for protection of constitutional rights such as a claim of confiscation, the issue must be determined on proofs brought down to a time as nearly as practicable to the date of the decision. Such rights are not to be determined on prognostications as to what the results may be when the actual results of the period are available."

In this connection plaintiff contends it is within the general equity jurisdiction of the court to secure to plaintiff its constitutional right of protection against confiscatory rates. The Michigan statute does vest that power in the court by the grant of review of the commission's rate orders. Resort thereto has been had in the instant case, and the matter is still pending in the circuit court ready for final decree based on the record made. But the conduct of such proceedings should be as provided in the applicable statute above cited which contemplates expeditious determination of rate controversies. By such procedure the telephone company was not deprived of making a record down to the approximate time of agreed submission of the issue on April 24, 1947. If, later, other circumstances developed which have had a material bearing on the adequacy of permitted rates, subsequent proceedings before the commission were available. Obviously there must be a termination at some point to a rate controversy. Otherwise no practical result can be accomplished in such proceedings. Holding to that effect is not a deprivation of due process of law.

A rate order which is confiscatory is an unreasonable order and cannot be sustained. In *City of Detroit* v. *Michigan Railroad Commission,* 209 Mich 395, 433 (PUR1920D, 867), we said:

"On matters involving the exercise of good common sense and judgment only, the determination of

the commission must be held to be final unless such determination in its application results in the establishment by 'clear and convincing' proof of a rate so low as to be confiscatory or so high as to be oppressive."

In view of the above we are not in accord with the italicized portion of the following statement in plaintiff's brief:

"What this court has heretofore referred to as 'strictly statutory' jurisdiction, * * * is jurisdiction to determine whether the orders made by the commission are unreasonable and therefore unlawful, * * * *and has no relation to the issue of confiscation."*

In the return of the circuit judge the following, which we think is sound in law, appears:

"The statute in such case made and provided, PA 1913, No 206, * * * contemplates a speedy review and determination of the questions involved, and Section 16 thereof, CL 1948, § 484.116 (CL 1929, § 11715 [Stat Ann § 22.1456]), mapping procedure when new evidence is introduced, contemplates that the court shall transmit a copy of such evidence to the commission; * * * and if the circuit judge is bound to take additional testimony and transmit it to the commission, this could be done time and time again, and the speedy review contemplated by law would prove interminable. * * *

"If conditions changed during the period of time immediately following the date of the commission's order (December 13, 1945), the plaintiff's remedy was to file a new petition with the commission, seeking increase of rates, rather than to prolong the pending review interminably by taking testimony in relation to such changed conditions."

The rate proceedings in the instant case were instituted in 1944. An order was made by the commission December 13, 1945. By the exercise of reason-

able diligence the proceedings, which except for filing briefs were fully submitted April 24, 1947, should have been concluded long prior to the present. This was obvious to the circuit judge who denied plaintiff's petition to reopen the case in November, 1948. Such denial was not an abuse of discretion nor did it deny plaintiff due process of law.

"One seeking the writ of mandamus must abide by the rules relating thereto, namely, that it is a writ of discretion and not of right; does not lie to review the exercise of judicial discretion; and is not granted to work an injustice." *Van Coppenolle* v. *City of Detroit* (syllabus), 313 Mich 580.

Plaintiff's petition for mandamus is denied. The issue being one primarily of public importance, no costs are awarded.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.