HORTON TELEPHONE COMPANY *v.* PUBLIC
SERVICE COMMISSION.

PETITION OF SOUTHERN TELEPHONE COMPANY.

1. WORDS AND PHRASES—FOREIGN EXCHANGE TELEPHONE SERVICE.
   Foreign exchange telephone service is a service furnished to a customer from an exchange other than the exchange in which the customer is located, the foreign exchange being the exchange from which he receives the service, and the normal exchange being the one in which the customer is located.

2. TELECOMMUNICATIONS—FOREIGN EXCHANGE TELEPHONE SERVICE.
   Foreign exchange telephone service is designed to meet the demands of customers who have a high community interest with an exchange other than the one in which they are located and such service may be furnished either by cross-boundary extensions or by the more expensive individual line service.

3. SAME—EXTENDED AREA TELEPHONE SERVICE.
   Extended area telephone service is toll-free service wherein certain toll circuits are dedicated to the unlimited use of customers of one exchange providing them with service to another exchange which would otherwise be on a toll basis, and enables a customer to have service from an exchange with which he may have the greater community of interest without the costly duplication of plant along exchange boundary lines.

4. SAME—ADMINISTRATIVE LAW AND PROCEDURE—PUBLIC SERVICE
   COMMISSION—REGULATION OF TELEPHONE COMPANIES.
   The power of the public service commission to regulate and alter rates and charges of telephone companies is not absolute because statutory provisions provide for judicial review to test the reasonableness of orders (CL 1948, §§ 484.103, 484.114, 484.118).

5. SAME — CROSS-BOUNDARY EXTENSION TELEPHONE SERVICE — EXTENDED AREA TELEPHONE SERVICE.
   Order of public service commission that no additional customers residing in area served by local appellant telephone exchange

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 52 Am Jur, Telegraphs and Telephones §§ 4, 81, 85, 86, 89-91.
[4] 52 Am Jur, Telegraphs and Telephones §§ 38, 53, 62.
[5] 52 Am Jur, Telegraphs and Telephones §§ 38, 46, 47.

owner be connected with nearby foreign exchange on the basis of cross-boundary extensions of exchange facilities by the foreign exchange owner and appellant exchange for the reason that extended area telephone service afforded by intervenor had eliminated need for foreign exchange service on the basis of cross-boundary extensions *held,* unreasonable and unsupported by record, the practical effect of the order being to prohibit appellant from obtaining new customers and forebode economic strangulation of appellant.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted Division 2 February 8, 1966, at Lansing. (Docket No. 757.)   Decided November 9, 1966.   Rehearing denied January 3, 1967.   Leave to appeal granted by Supreme Court March 22, 1967.   See 379 Mich 756.   Appeals dismissed per stipulation November 13, 1967.

Petition by Southern Telephone Company, a Michigan corporation, filed with the Michigan Public Service Commission for an order, after investigation and hearing, that no additional customers of Horton Telephone Company, a Michigan corporation, be connected to foreign exchange service, except for individual line service on a toll basis.   Order granted.   Horton Telephone Company appealed pursuant to statute by action in circuit court.   Order of commission affirmed.   Horton Telephone Company appeals.   Reversed.

*Sinas, Dramis, Brake & Werbelow (Richard J. Brake,* of counsel), for appellant Horton Telephone Company.

*Snyder, Loomis & Ewert (George W. Loomis* and *Rodger T. Ederer,* of counsel), for intervenor Southern Telephone Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Hugh B. Ander-*

*son* and *David P. Van Note,* Assistant Attorneys General, for the Public Service Commission.

T. G. KAVANAGH, J.   On June 20, 1963, Southern Telephone Company filed a petition with the Michigan public service commission alleging that it is a Michigan corporation engaged as a public utility in the business of furnishing telephone service in a certain territory, among others, in and about the village of Horton and certain surrounding areas in Jackson county, Michigan.   At the time the public service commission granted Southern authority to provide telephone service in the Horton area, an unincorporated voluntary telephone switchboard association, the Horton Mutual Telephone Company, was providing a manual-magneto telephone service to its members in the same area.

After the commission granted Southern a certificate of public convenience and necessity to operate in the Horton area, Southern established modern dial service therein, requiring a substantial investment.   During the period of time that Southern was establishing dial telephone service in the Horton area, a class suit was started in Jackson county circuit court seeking a dissolution of the Horton Mutual Telephone Company.   Southern was joined as a party plaintiff in this litigation which culminated in the entry of a consent decree dated March 9, 1960.   The decree, among other things, recognized the rights of Southern to furnish dial telephone service within the Horton area and the rights of Horton Mutual Telephone Company or a successor corporation to continue to operate its manual-magneto telephone system in the same area. The decree further recognized Southern's reservation of full rights to oppose the introduction of any competing dial telephone service in the Horton area.

Since the date of the decree, the Horton Telephone Company, a Michigan corporation, has succeeded the Horton Mutual Telephone Company.

The Michigan Bell Telephone Company is a public utility engaged in the business of furnishing telephone service in the State of Michigan. The Jackson exchange of Michigan Bell services the metropolitan area of Jackson, Michigan, and has extended area service with various communities having a community of interest with Jackson including the Horton area served by Southern's Hanover-Horton exchange. Extended area service was inaugurated in the Horton area by Southern and Michigan Bell on or about January 1, 1961.

The petition further alleged that, although there has been extended area service available through Southern's Hanover-Horton exchange to all interested parties in the Horton area, the Horton Telephone Company tariff on file with the public service commission has continued to permit the establishment of foreign exchange service in the Horton area on the basis of cross-boundary extensions from Michigan Bell's Jackson exchange. As a result of such tariff provision Michigan Bell, as of the date of this petition, was providing foreign exchange service to approximately 35 Horton customers in the Horton area. Since the establishment of extended area service between Michigan Bell's Jackson exchange and Southern's Hanover-Horton exchange, January 1, 1961, and January 1, 1963, a total of three new Horton foreign exchange customers were connected by Michigan Bell. Since January 1, 1963, and the date of the petition an additional six customers had been added.

Southern then averred in its petition that this continued connection of additional Horton customers in the Horton area to foreign exchange service by cross-boundary extensions from Michigan

Bell's Jackson exchange was contrary to the public interest; that the public interest requires Southern to provide modern dial telephone service; that the existing circumstances subvert Southern's investment and will impair Southern's ability to provide adequate telephone service upon an efficient and economical basis within its Hanover-Horton exchange, and that the existing circumstances really afford a means whereby a competing dial telephone service is furnished within the Horton area.

Southern then prayed that the public service commission, after investigation and hearing, enter an order providing that no additional customers residing in the Horton area shall be connected to foreign exchange service except in situations where such service is individual line service and is charged for only upon the basis of toll facilities.

The Michigan Bell Telephone Company answered, and averred, among other things, that the public service commission had authorized both Southern and Horton to provide telephone service in the Horton area, and that its Jackson foreign exchange service is provided to customers of Horton in accordance with filed tariffs as it is provided to customers of other telephone companies.

The Horton Telephone Company answered and averred, among other things, that it had committed no unlawful act or practice and that Southern's petition was, in effect, an attempt to curtail services long established and well recognized throughout the industry in order to give Southern a greater competitive advantage. Horton then prayed that Southern's petition be dismissed.

On December 5 and 6, 1963, a hearing on Southern's petition was conducted before the chairman of the public service commission at which all parties were present.

Certain definitions necessary to understand the proceedings were testified to at the hearing by the supervisor of the telephone section of the public service commission. From the transcript it appears that "foreign exchange telephone service" is a service furnished to a customer from an exchange other than the exchange in which the customer is located. The "foreign exchange" is the exchange from which he receives the service and the "normal exchange" is the one in which the customer is located. Foreign exchange service is designed to meet the needs of customers who have a high community interest with an exchange other than the one in which they are located. Foreign exchange services are furnished on one of two bases: (1) foreign exchange service by cross-boundary extensions and (2) foreign exchange service by individual line service.

The record indicates there are many differences in physical plant requirements between the two types of foreign exchange service, but the most important difference as far as the Horton customer is concerned is that foreign exchange service by individual line service would cost approximately $40 a month more than the same service provided by means of cross-boundary extensions.

Extended area service (which as above noted has been provided between Southern's Hanover-Horton exchange and Michigan Bell's Jackson exchange since January 1, 1961) is toll-free service wherein certain toll circuits are dedicated to the unlimited use of customers of one exchange providing them with service to another exchange which would otherwise be on a toll basis.

On March 19, 1964, the public service commission issued its findings and order. The commission found "the establishment of extended calling privileges between two exchanges virtually eliminates the

need for foreign exchange service on the basis of cross-boundary line extensions. The offering of foreign exchange service upon the basis of cross-boundary line extensions preceded the development of extended area service. The objective of the early offering of cross-boundary foreign exchange service was to enable a customer located near an exchange boundary line to have service from the exchange with which he has the greater community of interest. Extended area service obviously accomplishes this without the costly duplication of plant along boundary lines."

The commission then ordered that no additional customers residing in the Horton area be connected with the Jackson exchange on the basis of cross-boundary extensions of exchange facilities by Michigan Bell Telephone Company and the Horton Telephone Company, provided, however, that existing customers may retain the service at their present locations.

Horton appealed the commission order to the circuit court for the county of Ingham, which court affirmed the order on April 16, 1965. From this judgment, Horton appeals.

The statutory authority for Horton's appeal is CL 1948, § 484.114 (Stat Ann § 22.1454).

"Any telephone company or other party in interest, being dissatisfied with any final order of the commission made in any proceeding under this act, may within 30 days from the issuance of such order and notice thereof, commence an action in the circuit court in chancery against the commission as defendant to vacate and set aside any such order on the ground that * * * any such regulation, practice, or service fixed in such order is unreasonable."

CL 1948, § 484.118 (Stat Ann § 22.1458) provides:

"In all actions under this section the burden of proof shall be upon the complainant to show by clear

and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be."

The commission acted pursuant to CL 1948, § 484-.103 (Stat Ann § 22.1443) which provides:

"the commission shall have power to make, alter, amend or abolish any rate or charge for any service, and may regulate by rules or orders any service or facility."

The power of the public service commission to regulate and alter rates and charges obviously is not absolute because the statutory provisions above quoted provide for judicial review to test the reasonableness of the order. See *Michigan Bell Telephone Company* v. *Ingham Circuit Judge* (1949), 325 Mich 228 (81 PUR NS 599); *General Telephone Company* v. *Public Service Commission* (1954), 341 Mich 620 (8 PUR3d 67).

A review of the record convinces this Court that the order of the commission is unreasonable. The primary basis for Southern's petition is revealed in the testimony of its general manager to the effect that:

"In addition to creating further confusion in a chaotic situation in the territory affected, we believe that the continued connecting of such customers to foreign exchange service by cross-boundary extensions from Michigan Bell's Jackson exchange will adversely affect the development of our Hanover-Horton exchange and the type of service offered to the public.

"First, it is difficult to forecast the requirements for future growth. Our cabling in the Hanover-Horton exchange was engineered for 5 to 10 years' growth. Presently, after providing service for about three years, we have already added some

additional cable and anticipate the need for further cable relief.

"However, the situation will be even more complex and more difficult to engineer if there is a competing dial service in the exchange area. In other words, it is difficult to anticipate growth in the number of stations, but it is even more difficult to anticipate the requirements to meet this growth when we do not know what part of the growth will be served by Southern Telephone Company and what part of the growth will be served by Michigan Bell Telephone Company on the basis of foreign exchange service.

"We also believe that the continued connection of such customers will have an adverse effect upon the type of service which Southern Telephone Company can offer in the territory northeast of the village of Horton. This territory should experience considerable growth, resulting in increased customer density, and, as I explained to the chairman, when this density reaches the necessary requirements, an urban-type service should be provided in the area. Of course, the development of urban-type service in the area would result in all of the customers affected receiving better grades of service without the application of exchange line mileage charges or at reduced exchange line mileage charges, and would be in the public interest.

"Excuse me a moment.

"The continued connection of foreign exchange customers by Michigan Bell Telephone Company in this area would defeat the development of the necessary customer density on behalf of Southern Telephone Company, and would defeat the other developments necessary for the urbanization of this territory.

"We believe that the reasonably anticipated results would be that a no-man's land would develop, and that this situation will generally frustrate the development of adequate telephone service in the area."

Although Southern alleged that it would suffer future injury which would be borne by its customers if the order were not granted, an examination of the record does not reveal that Southern offered proof to support this allegation.

The record does disclose that the public service commission had received no complaints from anyone in the area that the telephone service available was deficient. It further discloses that the type of foreign exchange service provided by Horton is similarly provided by other telephone companies, including Southern, in other areas of the State. Foreign exchange service by cross-boundary extensions was offered by Horton at the time Southern petitioned the public service commission for permission to enter the area. Again according to the testimony of Southern's general manager Horton had 17 such customers prior to February 20, 1958 (the date Southern obtained its certificate of public convenience and necessity to serve the area); since that date and before the hearing on December 5, 1963, an additional 18 customers were added by Horton. On the other hand, Southern at the date of the hearing had between 650 and 660 customers and was continually growing.

It is significant to note that in the order of the public service commission of February 20, 1958, granting Southern permission to enter the Horton area, the following appears:

"Nothing in this order is to be construed as in any way disturbing the right of Horton Mutual Telephone Company to do business in the area it now occupies; nor dispossessing it of any physical property whatsoever; nor taking from it any privileges that it may have, save the exclusive right to provide telephone and allied services in the area in question."

The practical effect of the commission order is to prohibit Horton from obtaining any new customers. Since the 35 existing customers cannot transfer their service to another person or another location, the order forebodes the slow death of Horton by economic strangulation. Michigan Bell's position in this case is one of neutrality; an employee of the company testified that the controversy must be resolved by the commission between the two companies.

We would conclude Horton established by clear and satisfactory evidence that the order of the commission was unreasonable.

The judgment of the trial court is reversed. Judgment will enter in conformity with this opinion. Appellant may tax its costs.

LESINSKI, C. J., and QUINN, J., concurred.