430 Mich. 33 (1988)
420 N.W.2d 81
THE ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY
v.
PUBLIC SERVICE COMMISSION
ATTORNEY GENERAL
v.
PUBLIC SERVICE COMMISSION
Docket Nos. 77785, 77786, (Calendar No. 10).
Supreme Court of Michigan.
Argued April 8, 1987.
Decided March 7, 1988.
Hill, Lewis, Adams, Goodrich & Tait (by Roderick S. Coy and Nancy L. Lukey) for ABATE.
Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and Hugh B. Anderson and Alan J. Barak, Assistant Attorneys General, for the Attorney General.
David A. Mikelonis, Allen B. Bass, and H. Richard Chambers and Loomis, Ewert, Ederer, Parsley, Davis & Gotting (by George W. Loomis, Michael G. Oliva, and Ronald W. Bloomberg) for Consumers Power Company.
Don L. Keskey, Assistant Attorney General, for the Public Service Commission.
Amicus Curiae:
H. Wayne Wells and John M. Dempsey for Michigan Bell Telephone Company.
CAVANAGH, J.
This case presents the issue whether the Michigan Public Service Commission must allow the Attorney General and the Association of Businesses Advocating Tariff Equity (ABATE), as intervening parties, to introduce evidence relative to Consumers Power Company's request for partial and immediate rate relief. We *36 hold that the PSC has the discretion to grant a request for partial and immediate rate relief after having afforded intervenors a reasonable opportunity to present and cross-examine evidence on the request. The PSC also retains discretion to define the standards upon which it bases a grant of interim relief, to define what issues and factors, in a given case, are relevant to those standards as opposed to the standards for final relief, and to limit evidence to the written form.
I
This case has its genesis in Consumers Power Company's May 18, 1983, application to the PSC for authority to increase its gas rates by $179,900,000 annually. Consumers filed a "Motion for Partial and Immediate Rate Relief" (interim rate relief) concurrently with its application for a general gas rate increase. Consumers sought an interim gas rate increase of $98,200,000.[1] The Attorney General and ABATE were permitted by the PSC to intervene.
On August 2, 1983, following the second PSC prehearing conference, the hearing referee ruled that the intervenors could not present evidence or testimony on Consumers' request for partial and immediate rate relief.
Consumers presented its evidence in support of its general gas rate application and its motion for interim rate relief during sixteen days of hearings in August, 1983.
On August 16, 1983, the intervenors filed emergency applications with the PSC, challenging the ruling that they could not present evidence relative to the request for interim rate relief.
*37 On September 1, 1983, while the intervenors' appeals to the PSC were pending, the PSC staff filed its report, recommending an interim rate increase of $34,776,000. The staff report was admitted into evidence at a hearing held on September 8, 1983. The hearing referee permitted the Attorney General and ABATE to cross-examine the staff's witnesses, but, consistent with her August 2, 1983 ruling, did not permit the intervenors to introduce their own evidence. Oral arguments were waived, and written briefs were filed by all parties, including intervenors.
On September 29, 1983, ABATE and the Attorney General filed separate complaints for superintending control in the Ingham Circuit Court. A temporary order of superintending control was entered on September 30, 1983, preventing the PSC from proceeding with the rate case until the intervenors' evidence was presented. The parties then entered into a stipulation, which was subsequently approved by the circuit court, permitting the intervenors to introduce certain evidence on the request for interim rate relief. Pursuant to this stipulation, a hearing was held by the PSC on October 21, 1983, where ABATE'S evidence was received and cross-examined. An additional hearing was held on October 24, 1983, to receive and cross-examine the Attorney General's evidence.
On December 20, 1983, the PSC issued an order granting Consumers Power Company partial and immediate rate relief of $39,604,000 annually.
Meanwhile, at the circuit court, a hearing was held on plaintiffs' complaints for superintending control. The circuit court issued a written opinion on January 24, 1984, holding that the PSC may exclude intervenor evidence when considering a request for partial and immediate rate relief. Subsequently, on February 22, 1984, the circuit court *38 dismissed the complaints for superintending control.
The plaintiffs appealed to the Court of Appeals, which affirmed the decision of the circuit court in an unpublished per curiam opinion.
We granted leave to appeal, 425 Mich 871 (1986), and reverse the judgment of the Court of Appeals.
II
A
The PSC is statutorily vested with the discretion to grant partial and immediate rate relief to utilities pursuant to MCL 460.6a(1); MSA 22.13(6a)(1):
When any finding or order is sought by any gas, telephone or electric utility to increase its rates and charges or to alter, change or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, notice shall be given within the service area to be affected. When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission, pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility make a finding and enter an order granting partial and immediate relief, after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, and after having afforded to such interested parties reasonable opportunity for a full and complete hearing: Provided, That no such finding or order shall be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report: And provided further, That any alteration or amendment in rates or rate schedules applied for by any public *39 utility which will result in no increase in the cost of service to its customers may be authorized and approved without any notice or hearing. There shall be no increase in rates based upon changes in cost of fuel or purchased gas unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of fuel or purchased gas. The rates charged by any utility pursuant to an automatic fuel or purchased gas adjustment clause on the effective date of the amendatory act that added this sentence shall not be altered, changed, or amended unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of the fuel or purchased gas. [Emphasis added.]
It should be remembered that a public utility has a right to a just and reasonable rate of return on its investment.[2] Where the revenue produced by an existing rate structure is less than a reasonable or just amount, a public utility has a constitutional right to rate relief.[3] Moreover, as we have previously stated, a public utility has, "as a corollary to that substantive right, a right to immediate rate relief where compelling circumstances indicate that such relief is necessary." Consumers Power Co v PSC, 415 Mich 134, 145; 327 NW2d 875 (1982).
The interim rate relief procedures of § 6a(1) are intended to remedy a problem that may arise when a utility has applied for a permanent rate increase. Assuming that the PSC determines, after *40 extensive and prolonged proceedings,[4] that a rate increase is warranted, the utility will be unable to recover increased revenues during the pendency of its request for a permanent rate increase because the PSC is not permitted to enter an order with retroactive effect.[5] Immediate rate relief may be necessary, and in fact constitutionally required, where the rate of return is so unreasonably low as to be confiscatory. Section 6a(1) represents the legislative intent to protect a utility from unreasonable, and potentially confiscatory, rates during the pendency of a permanent rate proceeding, by providing for a more expedient and less exhaustive hearing for interim rate relief.[6]
B
Plaintiffs argue that the amendment of § 6a by Proposal H, subsequent to the decision in Great Lakes Steel v PSC, 416 Mich 166; 330 NW2d 380 (1982), reh den 417 Mich 1105 (1983), requires receipt of intervenor evidence and made reliance upon Great Lakes Steel by the Court of Appeals erroneous.
Proposal H amended § 6a by prohibiting automatic fuel and purchased gas adjustment clauses. There already existing a requirement for a reasonable *41 opportunity for a "full and complete hearing" prior to affording interim rate relief, generally, the amendment imposed a "full and complete hearing" requirement on adjustments on the basis of changes in cost of fuel or purchased gas, specifically. Additionally, in the very section in which the relevant use of the phrase "full and complete hearing" is found, the phrase is defined as follows:
As used in this section, a "full and complete hearing" means a hearing which provides interested parties a reasonable opportunity to present and cross-examine evidence.... [MCL 460.6a(2); MSA 22.13(6a)(2). Emphasis added.]
The Court of Appeals determined that this definition of "full and complete hearing" applied only to procedures for allowing rate adjustments for the costs of fuel, purchased gas, or purchased power. We disagree. This language does not present us with a situation where we may debate what the drafters and ratifiers meant when they used the term "full and complete hearing." Neither may this Court debate the wisdom of various schemes which could be used during the interim rate proceeding. The drafters and ratifiers have explicitly provided us with the answer, and we are bound to follow it. As we stated in Dussia v Monroe Co Employees Retirement System, 386 Mich 244, 249; 191 NW2d 307 (1971):
"[T]he legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretation to vary such meaning." [Quoting MacQueen v Port Huron City Comm, 194 Mich 328, 342; 160 NW 627 (1916).]
The importance of adhering to the clear statutory *42 language is magnified in this case since the language in question was added to the statute by an amendment approved by the voters through a referendum, i.e., Proposal H. As this Court said in In re Proposals D & H, 417 Mich 409, 423; 339 NW2d 848 (1983), when discussing this same proposal,
"`The people are presumed to know what they want, to have understood the proposition submitted to them in all of its implications, and by their approval vote to have determined that this [proposal] is for the public good and expresses the free opinion of a sovereign people.'" [Quoting Keenan v Price, 68 Idaho 423, 434; 195 P2d 662 (1948).]
It may be that a selective use of the definition would result in a more efficient procedure. However, once the people have spoken, it is not our role to review the wisdom of their judgment.
Furthermore, applying the Proposal H definition of a "full and complete hearing" to § 6a(1) procedures for interim rate relief would not create an inconsistency in the statute nor negate the express language of § 6a(1) that a motion for partial and immediate rate relief may be granted in the discretion of the PSC "pending the submission of all proofs by any interested parties ...." A basic tenet of statutory construction requires, if possible, that every word should be given meaning, and no word, or phrase, should be rendered nugatory or treated as surplusage.[7] Defendants assert that an harmonious interpretation of § 6a as a whole compels the conclusion that Proposal H'S definition of a "full and complete hearing" applies only to proceedings regarding the cost of fuel, purchased *43 gas, or purchased power.[8] However, it is equally reasonable to read the phrase as permitting the commission to make a decision on interim relief before the parties have submitted all the evidence relevant to final relief, i.e., while some evidence remains outstanding. Indeed, this latter view may be more reasonable since, had the Legislature intended that interim relief be granted prior to any evidence being introduced by intervenors, the Legislature could have used precisely that terminology. There also can be no doubt that the phrase in question is readily susceptible to an interpretation consistent with the definition contained in Proposal H. For this reason also, therefore, we hold that that definition must be applied.
We note, however, that the statute does not provide for a "full and complete hearing," as such, but instead provides for a "reasonable opportunity for a full and complete hearing." The "reasonable opportunity" language is not present in any of the other references to a "full and complete hearing" made in the section. We, therefore, conclude that the drafters and the voters intended that the PSC retain some discretion to exclude intervenor evidence during interim rate hearings. This discretion must not, however, be so broad so as to allow the commission to exclude evidence without a statutory basis. Instead, it shall be grounded in the commission's authority to determine upon what basis interim relief will be granted. In other words, the commission retains discretion to define the standards upon which it bases interim relief and to define what issues and factors, in a given case, are relevant to those standards. Intervenor evidence which bears upon standards or issues and *44 factors which the commission expressly designates solely to its final relief determination may be excluded. Such evidence would necessarily be admitted at the final rate hearing. In addition, the commission, so as to avoid protracted interim hearings, may decide that direct evidence must be submitted in written rather than oral form.
In determining that the PSC need not permit intervenors to introduce evidence relative to Consumers' request for partial and immediate rate relief, the Court of Appeals relied upon our decision in Great Lakes Steel v PSC, supra. The issue in Great Lakes Steel was whether a partial and immediate rate relief order is a final order, within the meaning of the Administrative Procedures Act and Const 1963, art 6, § 28, for purposes of appeal. We held that a partial and immediate rate relief order is not a final order within the meaning of the APA and the constitution. Id., 176-177. That holding was based in part upon our determination that the intent of the Legislature in providing for partial and immediate rate relief was "to provide an expedient, more summary, and less exhaustive hearing for the issuance of an interim rate order than for the issuance of a final order." Id., 181-182.
In analyzing the exact language at issue here, "the commission, pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility" grant interim rate relief, we held that such an order need not be sustained "by the same quality of procedural process and substantive proof as is required by § 85 [of the APA] to support a `final' permanent rate order." Id., 181.
As to the "full and complete hearing" language of subsection (1), we stated:
While subsection (1) does provide that interested *45 parties are to be afforded a "full and complete hearing" on the motion for partial and immediate relief, the context of the provision forcefully suggests that it was the intent of the Legislature to provide an expedient, more summary, and less exhaustive hearing for the issuance of an interim rate order than for the issuance of a final order. If the more formal and detailed requirements of § 85 of the APA for a "final decision or order" were applicable, interested parties would be entitled to "an opportunity to present evidence and argument on issues of fact." MCL 24.272(3); MSA 3.560(172)(3). While such a requirement would be ideal, it would convert the motion-predicated interim rate relief request into a full-blown petition proceeding which would be procedurally indistinguishable from the permanent rate request procedures which § 6a contemplates may last for as long as nine months. [Id., 181-182.]
While one might argue that in this pre-Proposal H analysis of "full and complete hearing" we implied no right of interested parties to "present evidence," even with the definition we explicate today, the general nature of the interim rate proceeding vis-a-vis a final order has not been changed.
C
Appellants finally claim that the exclusion of intervenors' evidence deprives ratepayers of due process of law under both the Michigan and United States Constitutions. As we have determined that intervenors have a statutory right to submit direct evidence at an interim rate hearing, we decline to address this constitutional argument.
CONCLUSION
MCL 460.6a(1); MSA 22.13(6a)(1) permits the PSC *46 to issue an order for partial and immediate rate relief after having afforded intervenors an opportunity to introduce some evidence. Section 6a(2)'s definition of a "full and complete hearing" is not limited only to hearings relative to the cost of fuel, purchased gas, or purchased power. Therefore, the PSC is required within its discretion as defined in this opinion, to consider relevant intervenors' evidence prior to granting interim rate relief. The judgment of the Court of Appeals is reversed.
RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with CAVANAGH, J.
NOTES
[1] Consumers Power Company subsequently amended its permanent rate request to $183,239,000 and its partial and immediate rate request to $101,609,000.
[2] Consumers Power Co v PSC, 415 Mich 134, 145; 327 NW2d 875 (1982); Michigan Bell Telephone Co v Ingham Circuit Judge, 325 Mich 228, 234; 38 NW2d 382 (1949); General Telephone Co v PSC, 341 Mich 620; 67 NW2d 882 (1954).
[3] Consumers Power Co v PSC, n 2 supra, 145; Michigan Consolidated Gas Co v PSC, 389 Mich 624; 209 NW2d 210 (1973).
[4] MCL 460.6a(3); MSA 22.13(6a)(3) establishes a nine-month period for the PSC to reach a decision in a rate-making case. The complexity of a case may result in lengthier proceedings. See Detroit Edison Co v PSC, 127 Mich App 499; 342 NW2d 273 (1983), lv den 419 Mich 867 (1984).
[5] Michigan Bell Telephone Co v PSC, 315 Mich 533; 24 NW2d 200 (1946); General Telephone Co v PSC, n 2 supra, 632; Michigan Consolidated Gas Co, n 3 supra, 640.
[6] old saying, "Justice delayed is justice denied," applies with particular force to a rate hearing. Every day a warranted rate increase is withheld is a day in which justice has been denied .... [Michigan Consolidated Gas Co, n 3 supra, 637.]
[7] Baker v General Motors Corp, 409 Mich 639, 665; 297 NW2d 387 (1980); Stowers v Wolodzko, 386 Mich 119, 133; 191 NW2d 355 (1971).
[8] A statute must be construed as a whole in order to effectuate the intent of the Legislature. Stowers, n 7 supra, 133; Smith v Wayne Co Sheriff, 278 Mich 91; 270 NW 227 (1936).