CONSUMERS POWER COMPANY v PUBLIC SERVICE
COMMISSION

ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket Nos. 62883, 62884. Argued January 9, 1980 (Calendar No. 11).
—Decided December 8, 1982. Rehearing denied 417 Mich 1103.

Consumers Power Company petitioned the Public Service Com-
mission for an increase in electric rates. The Public Service
Commission ordered an increase in rates and the filing of a
proposed schedule of rates, and then granted a petition by the
Attorney General for a public hearing on the reasonableness of
the proposed rates and refused the request by Consumers
Power Company that they be made effective immediately.
Consumers brought a complaint against the Public Service
Commission in the Ingham Circuit Court to appeal the decision
of the Public Service Commission as an order "fixing rates"
under the statute or to obtain injunctive relief under the
general equitable jurisdiction of the circuit court. The Attorney
General and the Michigan Retailers Association intervened as
defendants. The Ingham Circuit Court, Marvin J. Salmon, J.,
granted the plaintiff a preliminary injunction which permitted
the plaintiff to collect the proposed electric rates temporarily,
effective on October 21, 1969. After the Public Service Commis-
sion, on April 20, 1970, issued an order approving a lower
schedule of rates than those proposed by Consumers, the circuit
court ordered Consumers to refund the difference between the
two schedules, leaving in dispute $6,623,417 of the amount
collected under the preliminary injunction. The Attorney Gen-
eral and the City of Wyoming brought another action against

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 64 Am Jur 2d, Public Utilities § 134.

[2] 64 Am Jur 2d, Public Utilities § 135.

[3-5, 9, 10] 64 Am Jur 2d, Public Utilities § 278.

[4] Adequacy, as regards right to injunction, of other remedy for
review of order fixing public utility rates. 8 ALR 839.

[6, 8] 64 Am Jur 2d, Public Utilities § 126.

[7, 11] 64 Am Jur 2d, Public Utilities § 230.

[12] 16 Am Jur 2d, Constitutional Law §§ 316, 317.

[13] 64 Am Jur 2d, Public Utilities §§ 232, 240.

the Public Service Commission in the Ingham Circuit Court to appeal the schedule of rates approved by the Public Service Commission. The Michigan Retailers Association and the City of Grand Rapids intervened as plaintiffs and Consumers Power Company intervened as a defendant. The cases were consolidated, and the Ingham Circuit Court, Ray C. Hotchkiss, J., granted summary judgment for Consumers, deciding that the circuit court had jurisdiction under its general equitable powers to order the temporary rates. The Court of Appeals, Cynar, P.J., and R. B. Burns and Breighner, J., affirmed on the ground that the circuit court had jurisdiction in the matter as an action to appeal an order of the Public Service Commission "fixing rates" under the statute (Docket Nos. 78-603, 78-604). The Attorney General, the Michigan Retailers Association, the City of Wyoming, and the City of Grand Rapids appeal.

In an opinion by Justice Levin, joined by Chief Justice Fitzgerald and Justices Kavanagh, Coleman, and Ryan, the Supreme Court *held:*

A circuit court, in the exercise of general equitable powers, may permit a public utility to collect rates in excess of the existing rates in the interim between the time the Public Service Commission determines that the utility is entitled to a rate increase and the time a final order establishing new rate schedules is entered, subject to refund if it is determined that the amount collected is excessive.

1. A public utility has a substantive right to rate relief where the revenue produced by an existing rate structure is less than the amount required by a statute or the constitution. Where circumstances are such that immediate relief is necessary, the utility has a right to immediate relief. The power to determine whether such relief should be provided is vested in the Public Service Commission. The circuit court, however, may provide relief where an order of the commission is erroneous or where statutory or administrative procedures inadequately protect the substantive rights of the utility.

2. The circuit court need not require that a party exhaust available administrative remedies before reviewing a determination by an agency. Where the party can demonstrate that it would suffer irreparable harm if it were required to await a final agency action, or where the party can demonstrate the absence of an adequate administrative remedy or of a remedy at law, the court, in the exercise of its equitable jurisdiction, may enter an appropriate order to protect the party from irreparable harm.

3. In this case, the commission concluded that it did not have

the authority to grant immediate relief because statutory procedures providing for interim relief were inapplicable. Under the circumstances, there was no adequate administrative recourse for Consumers to obtain relief. The circuit court, in the exercise of its equitable powers, filled the procedural gap by providing interim relief subject to a final determination by the commission. The grant of a temporary injunction was not ratemaking by the court. Rather, it prevented confiscation of Consumers' property. Because the commission determined that new rates were warranted, effective as of the time of the court's order, the commission's action, not the court's, validates Consumers' retention of the revenues collected in the interim.

4. The exercise of general equitable powers by a circuit court with respect to the collection of interim rates by a utility is not inconsistent with the commission's primary statutory jurisdiction to regulate ratemaking. A temporary injunction merely prevents irreparable harm to the utility until the commission makes a final rate determination.

5. The circuit court had a sufficient factual basis to grant its injunction. The commission had determined that Consumers suffered a revenue deficiency before it determined new rate schedules. Its refusal to implement Consumers' proposed rate schedules without further hearings was a departure from its practice of making effective upon filing proposed rate schedules which were approved by its technical staff. The further delay until the commission's final rate order was entered would have caused Consumers irreparable harm. The court's order preserved the status quo.

Affirmed.

Justice Williams dissented. He would hold that the circuit court has neither appellate jurisdiction under the statute nor original general equity jurisdiction to permit the temporary collection of proposed rates.

1. The finding of the Court of Appeals that there was substantial compliance by the Public Service Commission with the statutory provision for granting partial and immediate relief is manifestly erroneous. In this case, Consumers was seeking complete acceptance of its proposed rates rather than "partial and immediate relief", and the Public Service Commission did not make an order granting partial and immediate relief, directly or by implication. The Public Service Commission decided that it did not have the authority to grant relief pending a hearing on the proposed schedule of rates. Even if there had been such an order it could not, under the statute,

have been granted without notice to the interested parties, and the statute particularly provides against an *ex parte* order granting partial relief. The Public Service Commission is a creature of statute, without any common-law power, and the warrant for its exercise of authority must be specifically found in a statutory enactment. It is also clear that the order in question was not one under the general ratemaking provision of the statute. Therefore, there is no order of the Public Service Commission fixing any rate for appellate review by the circuit court.

2. The Court of Appeals apparently concluded that when the Public Service Commission denied the request for immediate effect of the proposed rates and granted the request for a public hearing, that amounted to an order "fixing any rate", and that the circuit court then had statutory appellate jurisdiction. That conclusion is erroneous because there is no order meeting the statutory criterion. The argument would, if carried to its logical conclusion, establish an order setting rates which could be appealed to the circuit court whenever the Public Service Commission, for whatever reason, refused a request by a public utility to put a rate increase into effect. That result certainly would not make much sense, and there is no evidence that the Legislature contemplated anything like it.

3. Even if the action of the Public Service Commission in refusing to grant the request for immediate effect of the proposed rates had constituted an appealable order, the relief granted by the circuit court is outside the scope of the statute. The language of the statute is clear and unambiguous: the circuit court may "vacate and set aside" the order where the rates fixed are unlawful or unreasonable. The power to vacate unlawful or unreasonable rates is quite separate from the power to grant increased rates, which the Legislature has given exclusively to the Public Service Commission because of its special expertise and factfinding powers. It is obvious that the statutory language does not authorize the issuance by the circuit court of a temporary injunction fixing an increased schedule of rates.

4. The statute also authorizes the circuit court to exercise its general equity powers to make an order in accordance with the facts and the law, but the provisions of the statute have not been construed to lodge in the courts power to establish rates. If the circuit court finds that rates are unreasonable or unlawful, it is not authorized to determine what rates are reasonable, but the matter must be referred to the Public Service Commis-

sion to establish other rates. The circuit court lacked jurisdiction under the statute to issue a temporary injunction.

5. Ratemaking for public utilities is a governmental power vested in the Legislature, which has properly delegated the power to administrative agencies, and most recently to the Public Service Commission. The courts have neither the authority nor the expertise to determine what structure of rates most equitably spreads an increase in rates among commercial businesses, industries, households, and other users of the public utility. The Legislature has delegated its ratemaking power to the Public Service Commission with considerable particularity and without contemplation of any judicial ratemaking. Consequently, if the Ingham Circuit Court intended to exercise its general equitable jurisdiction to fix rates, it was in error. Such an action would breach the constitutional separation of powers by authorizing the judicial branch to exercise a function belonging to the Legislature.

6. The practical result of the preliminary injunction in this case is that, pending the decision on the proposed rate structure, the public utility collects at a higher rate than the one originally imposed by the Public Service Commission, and the collection begins at the time of the court's order. The court is in reality setting rates, even though they may be subject to later correction by the Public Service Commission and refund. There may be cases where such a system would be in the public interest; however, the circuit court's action in setting such rates is, without license, intruding on the Legislature's power and function to set rates. That should not be permitted, particularly because the courts lack the special expertise of the Public Service Commission in the matter. The serious problem of delay in both increasing and decreasing rates is a proper subject for the Legislature, which has tried to fashion a solution by establishing a procedure for requesting partial and immediate rate increases and setting a nine-month time for action by the Public Service Commission on the request.

7. The appellants who represent the customers in this case request a refund of the revenues collected by Consumers Power Company under the preliminary injunction which were above the prior rates. The circuit court acted erroneously in permitting the higher rates to be collected; however, the Public Service Commission had already determined that Consumers was entitled to higher revenues and later indicated that the final order should have been retroactive. Further, this was the first case in which the Public Service Commission had not granted new rates simultaneously with the finding of a short-

age of revenue. The appellants were not unjustly disadvantaged economically. The cost and effort of distribution of a refund would be disproportionate to the relatively small amount involved for each subscriber, because the average refund, without interest, would be $6.50 in this case. The events in this case happened 12 years ago, and despite the special records that were kept, many of the former subscribers would not be found or would be found only at excessive cost. The law does not require the doing of vain or useless things; to order a refund in this case would result in prohibitive costs and most likely could not be effectively carried out.

88 Mich App 633; 278 NW2d 702 (1979) affirmed.

### OPINION OF THE COURT

1. PUBLIC UTILITIES — EQUITY — RATEMAKING — COLLECTION OF REVENUES.

The general equity jurisdiction of the circuit court has not been superseded by the enactment of statutory procedures for the regulation of public utility ratemaking by the Public Service Commission; the circuit court may permit a public utility to collect rates in excess of existing rates in the interim between the time the commission determines that the utility is entitled to a rate increase and the time a final order establishing new rates is entered, subject to refund if it is determined that the amount of revenues collected is excessive (Const 1963, art 6, § 13; MCL 460.4, 460.6, 460.6a, 600.605; MSA 22.13[4], 22.13[6], 22.13[6a], 27A.605).

2. PUBLIC UTILITIES — RATEMAKING — UNJUST RATE STRUCTURES.

A public utility has a substantive right to rate relief where the revenue produced by an existing rate structure is less than what is just and reasonable, and, where circumstances indicate that immediate relief is necessary, the utility has a right to immediate relief (MCL 460.6, 460.6a; MSA 22.13[6], 22.13[6a]).

3. PUBLIC UTILITIES — EQUITY — RATEMAKING.

The power to decide whether rate relief should be provided to a public utility is vested in the Public Service Commission, and statutory procedures for such ratemaking must be observed; however, the circuit court may provide relief from an erroneous order of the commission, and, where statutory or administrative procedures are inadequate to protect the substantive rights of the utility, the court, in the exercise of its equitable powers, may provide relief to protect those rights (MCL 460.6a; MSA 22.13[6a]).

4. PUBLIC UTILITIES — EQUITY — RATEMAKING.

The grant of a temporary injunction by a circuit court enabling a public utility to collect rates in excess of the existing rates in the interim between the time the Public Service Commission determined that the utility was entitled to a rate increase and the time a final order establishing new rate schedules was entered was not ratemaking by the court, inconsistent with the primary jurisdiction of the commission to regulate public utility ratemaking, where the commission decided to depart from its practice of making proposed rate schedules which were approved by the commission's technical staff effective upon filing by a utility and instead ordered public hearings to determine the reasonableness of the rate allocation, and concluded that it did not have authority to grant immediate relief to the utility, thus leaving the utility with no adequate administrative recourse to obtain relief; rather, the grant prevented confiscation of the utility's property.

5. PUBLIC UTILITIES — EQUITY — RATEMAKING.

The exercise of general equitable powers by a circuit court in issuing a temporary injunction permitting a public utility to collect rates in excess of existing rates in the interim between the time the Public Service Commission determines that the utility is entitled to a rate increase and the time a final order establishing new rate schedules is entered is not inconsistent with the commission's primary statutory jurisdiction to regulate public utility ratemaking; the temporary injunction merely prevents irreparable harm to the utility by preserving the status quo until the commission makes a final determination (MCL 460.6a; MSA 22.13[6a]).

DISSENTING OPINION BY WILLIAMS, J.

6. PUBLIC UTILITIES — RATES — IMMEDIATE RELIEF — APPEAL.

*The Public Service Commission did not make an order granting a public utility interim relief which could be appealed to the Ingham Circuit Court where the public utility, ex parte, sought complete, rather than partial, acceptance of a proposed increase in rates, and the Public Service Commission did not comply with the statutory requirements for granting such relief, but merely advised the public utility that it did not have the authority to grant the relief requested and scheduled public hearings on the issue of the proposed rates (MCL 460.6a, 462.26; MSA 22.13[6a], 22.45).*

7. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — STATUTES — ADMINISTRATIVE LAW.

> *The Public Service Commission is a creature of statute, without any common-law power, and the warrant for its exercise of authority must be specifically found in a statutory enactment (MCL 460.1 et seq.; MSA 22.13[1] et seq.).*

8. PUBLIC UTILITIES — RATES — APPEAL — CIRCUIT COURT.

> *The Ingham Circuit Court has jurisdiction in an action to set aside an order of the Public Service Commission fixing rates only if there is an order issued under the general ratemaking powers of the Public Service Commission or one issued under the provisions for partial and immediate relief; there is no evidence that the Legislature contemplated permitting a public utility to appeal to the Ingham Circuit Court whenever the Public Service Commission, for whatever reason, refuses a request by a public utility to put a rate increase into effect immediately (MCL 460.6, 460.6a, 462.26; MSA 22.13[6], 22.13[6a], 22.45).*

9. PUBLIC UTILITIES — RATES — REMEDIES — CIRCUIT COURT — INJUNCTIONS.

> *The statutory language permitting the Ingham Circuit Court to "vacate and set aside" any order of the Public Service Commission fixing rates does not authorize the issuance by the circuit court of a temporary injunction fixing a schedule of rates; the power to vacate unreasonable or unlawful rates is quite separate from the power to grant increased rates, which the Legislature has given exclusively to the Public Service Commission because of its special expertise and factfinding powers (MCL 462.26; MSA 22.45).*

10. PUBLIC UTILITIES — RATES — CIRCUIT COURT — JURISDICTION — EQUITY.

> *The statute which gives the Ingham Circuit Court jurisdiction in an action to set aside an order of the Public Service Commission fixing rates authorizes the general exercise of equitable powers by the circuit court, but it does not lodge in the court power to establish rates; if the circuit court finds that rates are unreasonable or unlawful it cannot determine what rates are reasonable, but the matter must be referred to the Public Service Commission to establish other rates (MCL 462.26; MSA 22.45).*

11. PUBLIC UTILITIES — RATES — ADMINISTRATIVE LAW — PUBLIC SERVICE COMMISSION — STATUTES.

> *The authority to fix rates for public utilities is primarily a*

*governmental power vested in the Legislature; the Legislature has properly delegated the ratemaking function to the Public Service Commission with considerable particularity and without any contemplation of judicial ratemaking (MCL 460.1 et seq.; MSA 22.13[1] et seq.).*

12. PUBLIC UTILITIES — RATES — CONSTITUTIONAL LAW — SEPARATION OF POWERS — PUBLIC SERVICE COMMISSION — COURTS — INJUNCTIONS.

*A preliminary injunction, issued by the Ingham Circuit Court under its general equitable jurisdiction, which permits a public utility to increase its rates pending a decision by the Public Service Commission on a proposed rate schedule breaches the constitutional separation of powers; the action of the circuit court amounts to an intrusion on the legislative function of setting rates for public utilities which should not be permitted, particularly because the courts lack the special expertise of the Public Service Commission in the matter (Const 1963, art 3, § 2; art 6, § 13; MCL 460.1 et seq., 600.601; MSA 22.13[1] et seq., 27A.601).*

13. PUBLIC UTILITIES — RATES — REMEDIES — EQUITY.

*It is not equitable to grant a refund to subscribers of excess rates collected for approximately six months by a public utility under a preliminary injunction which was erroneously issued by the Ingham Circuit Court, where the Public Service Commission had already determined that the public utility was entitled to higher revenues and later indicated that the final order increasing rates should have been retroactive, the case was the first one in which the Public Service Commission had not granted new rates simultaneously with the finding of a shortage of revenue, and, because 12 years had passed since the rates were collected, the cost and effort of the distribution of a refund would be disproportionate to an average refund of $6.50 for each subscriber.*

*Lawrence B. Lindemer, Allen B. Bass, David A. Mikelonis,* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *George W. Loomis, Harvey J. Messing,* and *Michael G. Oliva)* for Consumers Power Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Ander-*

*son* and *Roderick S. Coy,* Assistants Attorney General, for the Attorney General.

*William J. Garlington* for the City of Wyoming.

*Philip A. Balkema* for the City of Grand Rapids.

*Arthur E. D'Hondt,* Assistant Attorney General, for the Public Service Commission.

*MacLean, Seaman, Laing & Guilford* (by *Kenneth Laing* and *Kathleen Opperwall)* for the intervenor Michigan Retailers Association.

LEVIN, J. The Michigan Public Service Commission determined that Consumers Power Company was entitled to an annual increase of $16,514,000 in operating revenue for electric service. In a departure from past practice, the commission, before entering a final order adopting new rate schedules allocating the annual increase among Consumers' customers, ordered a public hearing to determine the reasonableness of the proposed rate schedules.

Consumers asked the commission to implement the proposed rates under bond with any excess collected to be refunded after the commission issued its final rate order. The commission denied this request. It said that it "was unaware of any statutory authority empowering it" to provide such immediate relief.

Consumers applied to the circuit court for a preliminary injunction authorizing it to implement the proposed rates under bond. The court granted the preliminary injunction and Consumers collected $7,762,873, of which $39,855 was later refunded to a class of customers for whom lower rates were set in the final commission order.

The Court of Appeals affirmed the action of the circuit court as a proper exercise of the court's statutory appellate jurisdiction, finding it unnecessary to determine whether the circuit court could, in the exercise of its general equity jurisdiction, issue such an injunction.

We reaffirm this Court's decision in *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973), that the general equity jurisdiction of the circuit court has not been superseded by statutory procedures. In an appropriate case the circuit court can, in the exercise of general equitable powers, provide injunctive relief permitting a public utility to collect revenues in excess of those approved by the commission, subject to refund if, after final commission action and appellate review, an excessive amount has been collected.

We conclude that, under the circumstances of the instant case, including that the commission did not regard itself as having the authority to provide immediate relief, the circuit court acted properly in entering an injunctive order. The commission's subsequent action making the proposed rate structure effective as of the date that the injunction became effective confirmed Consumers' right to retain substantially all the money collected pursuant to the injunctive order.[1]

---

[1] This Court's decision in *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533, 555; 24 NW2d 200, 209 (1946), holding that the commission could not enter an order with retroactive effect requiring *a refund of money properly collected under a prior commission order* and stating that "[t]he commission's power to fix utility rates and charges is limited to orders which are prospectively effective", preceded the enactment of 1952 PA 243, MCL 460.6a; MSA 22.13(6a), authorizing the commission to grant "partial and immediate relief" before the entry of a final rate order.

In the instant case, the commission had already determined the amount of the revenue deficiency and, under prior practice, would have made effective without delay the increase in revenue. Its subse-

A

A public utility has a substantive right, set forth in the statutes and rooted in the constitution, to rate relief where the revenue produced by an existing rate structure is less than the amount required by the statutes or the constitution.[2] A public utility has, as a corollary to that substantive right, a right to immediate rate relief where compelling circumstances indicate that such relief is necessary.[3]

The power to decide whether any rate relief should be provided and whether immediate relief shall be provided is vested in the commission. Because the authority to set utility rates is vested in the commission and statutory procedures must be observed, the judicial role is limited.

The circuit court may, however, provide relief from an erroneous order of the commission. And, where statutory or administrative procedures inadequately protect the substantive rights of the utility, the circuit court can, in the exercise of its equity powers, provide a remedy to avoid irreparable harm to the substantive rights of the utility.

The substantive right to rate relief includes the right to a determination, following a hearing if necessary, whether immediate or permanent relief shall be granted. Adequate statutory procedures must be observed. In the instant case, however, the commission was of the opinion that the statute

quent April 20, 1970, order, making the increase effective on the date the injunction became effective, did not constitute retroactive ratemaking, as proscribed in *Michigan Bell.*

[2] *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973).

[3] See *infra,* Part IIC.

did not authorize it to grant immediate relief. In those circumstances, a court of equity can fill the procedural gap and enter a protective order subject to the commission's ultimate determination whether relief (immediate or permanent) was warranted.

## B

If the commission had ultimately determined that relief was not warranted as of the time it was secured by the circuit court injunction, Consumers would—because a court is not empowered to fix or make permanently effective a rate not approved by the commission—be required to refund so much of the money collected not authorized by the final order.

In the instant case, the commission's final order provided that Consumers was entitled to collect the new rates as of the time the injunction became effective, thereby determining that relief as of that date was warranted. It is thus the commission's action and not the court's which, in the instant case, authorizes Consumers' retention of the money collected pursuant to the temporary injunction.

The circuit court, sitting as a court of equity, preserved the status quo, the commission having taken the view that it was unable to do so, until the commission determined whether relief should be granted as of the time it was secured by the injunction. Absent an injunctive order, Consumers would have suffered irreparable harm because it may have been impossible to later implement the higher rates authorized by the commission.

I

Some fourteen months after Consumers filed an application, on July 15, 1968, for rate increases for gas and electric service, the commission issued an order, on September 29, 1969, which authorized an annual increase of $16,514,000 in operating revenue for electric service. The order also directed Consumers to submit a proposed rate structure allocating the revenue increase among its customers. Prior to issuing the order, the commission had given notice of hearing to Consumers' customers and had conducted rate proceedings involving 17 days of public hearings in which the Attorney General and other persons participated.[4]

Under then prevailing practice, unless a question involving specific rates and schedules was raised, the commission made findings regarding operating revenue and expenses, and rate base and rate of return, and then directed a utility to file a schedule of new rates in compliance with the findings. Filing procedures regarding specific proposed rates and schedules included staff review of the new rates and determination by the commission that the new rates were appropriate.

The commission conceded in its answer to the complaint filed by Consumers in the circuit court that theretofore *ex parte* approval of proposed schedules had followed the filing of such schedules,

[4] *Consumers Power Co v Public Service Comm,* 88 Mich App 633; 278 NW2d 702 (1979).

The September 29, 1969, order also found an annual revenue deficiency of $21,308,000 for gas service. The commission completed its hearings on Consumers' proposed gas rates and entered a final rate order on October 21, 1969, the date upon which the preliminary injunction issued. Consumers' request for injunctive relief from inadequate rates for gas service became moot when the commission authorized the new gas rates.

and that the commission had not considered a public hearing on proposed rate schedules mandatory and had made schedules effective without further hearings.

In the instant case, however, on October 1, 1969, the Attorney General requested a public hearing to determine the reasonableness of the rate schedules proposed by Consumers to implement the $16,514,000 increase in revenue. The commission departed from the established practice and granted the request. On October 3, 1969, Consumers asked the commission to permit it to implement the proposed new rates under bond subject to refund of any excess collected. The commission refused the request, although its staff had found that the proposed rates would generate the additional revenue authorized by the commission, were reasonable, and equitably distributed the additional charges among the various classes of customers. The commission said that it was unaware of any statutory authority empowering it to grant immediate relief.

On October 6, 1969, the day on which the commission issued a notice of hearing scheduling an October 16-17 hearing on the proposed rates, Consumers sought injunctive relief in the Ingham Circuit Court, alternatively in equity and as a statutory appeal. On October 21, 1969, the circuit court issued a preliminary injunction authorizing the collection of the increased revenue under bond, stating that it found that Consumers had demonstrated that it would otherwise suffer irreparable harm. The Court of Appeals affirmed.

Six months later, on April 20, 1970, the commission entered a rate order fixing final rates to be

effective October 22, 1969, one day after the date on which the preliminary injunction issued. The commission's final rate order authorized the rates collected by Consumers in accordance with the injunction except for one class of customers. Consumers refunded the excess collected.[5]

In the circuit court and the Court of Appeals, the commission maintained that Consumers should not be compelled to make further refunds because the commission had found, in its April 20, 1970, order, the charges collected to be reasonable.[6]

The commission now supports the Attorney General's and Michigan Retailers Association's appeal to this Court.

## II

The Attorney General, the Michigan Retailers Association, and the commission contend that the circuit court improperly exercised general equity jurisdiction because Consumers had not exhausted

---

[5] The proposed rates were in excess of those ultimately approved by the commission for one class of customers, smaller apartment houses, and, pursuant to a May 25, 1970, stipulation and the court order of May 26, 1970, Consumers refunded $39,855 to the members of that class.

Additionally, in consequence of a change in the federal income tax surcharge, Consumers refunded $1,099,601 of the $7,762,873 collected. *Consumers Power Co v Public Service Comm,* 65 Mich App 73; 237 NW2d 189 (1975), *lv den* 396 Mich 817 (1976).

[6] The commission's counsel, in proceedings before the circuit court, stated:

"and it is the position of the commission at this time that in view of the fact that the commission has found that the electric rates collected under the preliminary injunction were the modifications resulting from the order from which I have just read, are reasonable and that the commission order should relate back to the date approximately of the preliminary injunction, that the commission will not at this time any longer, will not contest Consumers Power's claim to the rates collected under the court's injunction as modified by the commission order."

administrative remedies and because, in denying Consumers' request for immediate effectiveness of the proposed rate schedule, the commission did not issue a final order from which Consumers could pursue a statutory appeal.[7] The commission further contends that it has no statutory authority to grant *ex parte* relief.

We are persuaded that the circuit court properly exercised its general equity power. There was a sufficient factual basis to support the conclusion that there was no adequate administrative remedy which would avert irreparable harm Consumers would suffer if it continued to be limited to the collection of revenue at a level the commission had already found to be inadequate.

### A

In *General Telephone Co of Michigan v Public Service Comm,* 341 Mich 620, 633; 67 NW2d 882 (1954), and in *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 631, 634-636; 209 NW2d 210, 212, 213-214 (1973), this Court ruled that the Ingham Circuit Court may, when reviewing a commission decision, exercise its general equity power[8] and enter a temporary injunc-

[7] The Attorney General also argues that Consumers filed insufficient pleadings, and the Attorney General and the Michigan Retailers Association further argue that Consumers improperly sought what amounts to a *mandamus* action. We find these arguments to be without merit.

[8] Const 1963, art 6, § 13 and Michigan statutes confer broad original jurisdiction over legal and equitable claims on the circuit courts. The Revised Judicature Act defines the scope of the original jurisdiction of the circuit courts:

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605; MSA 27A.605.

tion authorizing the collection of rates not yet approved by the commission in order to prevent "confiscation of property". The express grant of equity jurisdiction to the circuit court in the 1909 enabling act preserved the general equity jurisdiction of the circuit court in statutory appeals and did not by inference deprive the circuit court of general equity jurisdiction.[9]

As this Court construed the 1909 act, so we construe in the same manner the language of the 1939 act, creating the Michigan Public Service Commission, concerning the circuit court's power to grant an injunction to suspend or to stay a commission decision.[10] Again, no statement in the

___

[9] In *Michigan Consolidated Gas Co, supra,* p 635, this Court rejected the argument that § 26 of 1909 PA 300, MCL 462.26; MSA 22.45, deprives the circuit court of general equity jurisdiction. This Court found that the statute does not contain a direct statement limiting the circuit court's general equity powers. The Court also reasoned, construing the statute as a whole, that it provides for the immediate effectiveness of a commission rate order without the necessity of a mandamus action, § 25, MCL 462.25; MSA 22.44, and prevents the issuance of any *ex parte* injunction, § 26(b), MCL 462.26(b); MSA 22.45(b), but that it permits the circuit court to exercise general equity jurisdiction to protect a utility from confiscatory rates, and that its requirement that the complainant shoulder the burden of proof, § 26(e), does not prevent the grant of a temporary injunction upon a "convincing showing" that the "grant or refusal of a rate increase will result in irreparable injury," 389 Mich 634-640.

The Attorney General cites *Michigan Bell Telephone Co v Ingham Circuit Judge,* 325 Mich 228; 38 NW2d 382 (1949), for the proposition that the circuit court has no general equity jurisdiction apart from the jurisdiction expressly conferred in § 26(a) of the 1909 act and incorrectly asserts that this Court construed the 1909 act in that opinion. This Court did not but, rather, construed 1913 PA 206, §§ 14-16, MCL 484.114-484.116; MSA 22.1454-22.1456, which parallel § 26(a) of the 1909 act with the significant exception that the *1913 act permits appeals only from "any final order"*. The statement in *Michigan Bell Telephone Co* that the 1913 statute "vest[s]" the power to protect a party from confiscatory rates "by the grant of review of the commission's rate orders", 325 Mich 234, does not apply to the 1909 act. Nor does such language imply that no source other than a statute confers general equity jurisdiction upon the circuit court.

[10] MCL 460.4; MSA 22.13(4).

1939 act limits the circuit court's general equity powers.[11]

The 1939 act vests the commission with jurisdiction to regulate public utility ratemaking.[12] The exercise by a circuit court of general equity powers is not inconsistent with the concept that the commission has jurisdiction over utility ratemaking nor does it constitute ratemaking by the courts. *Michigan Consolidated Gas Co, supra,* p 631. A temporary injunction merely prevents irreparable harm to the utility until the commission makes a final rate determination.

The utility in *Michigan Consolidated* complained that new rates set by the commission were inadequate. The utility in this case complained that the commission's change in practice would cause further delay in setting new rates and result in the collection of inadequate revenue and there was no adequate administrative recourse.[13] In *Michigan*

[11] See 1 Pomeroy, Equity Jurisprudence, § 131, pp 179-180.

[12] MCL 460.6; MSA 22.13(6).

[13] We repeat what was so well said in *Michigan Consolidated Gas Co, supra,* pp 637-638:

"The old saying, 'Justice delayed is justice denied,' applies with particular force to a rate hearing. Every day a warranted rate increase is withheld is a day in which justice has been denied unless judicial action, as in this case, can be taken. Any statutory attempt to so curtail the power of the judiciary would be unconstitutional as an infringement of due process.

"In *Michigan Bell Telephone Co v Ingham Circuit Judge,* 325 Mich 228, 234; 38 NW2d 382 (1949), this Court, while denying the remedy therein sought by plaintiff, specifically affirmed the proposition that: 'A rate order which is confiscatory is an unreasonable order and cannot be sustained.' See, also, *General Telephone Co of Michigan v Public Service Comm, supra.*

"In *Ohio Valley Water Co v Ben Avon Borough,* 253 US 287, 289; 40 S Ct 527; 64 L Ed 908 (1920), where the issue of judicial review was raised, it was stated:

" 'In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own

*Consolidated Gas Co, supra,* p 637, this Court said that, in spite of the complexity of rate proceedings, it could not "in deference to the administrative process, hold that the judicial power is suspended until such time as the administrative proceedings become final".

### B

To decide that the circuit court has general equity jurisdiction does not decide whether the court properly exercised its jurisdiction. "Whether a given case falls within equity jurisdiction is a question different from whether the case is one in which the relief peculiar to that jurisdiction should be granted." *Solo v Chrysler Corp (On Rehearing),* 408 Mich 345, 353; 292 NW2d 438, 441 (1980).

In *Michigan Consolidated Gas Co v Public Service Comm,* 405 Mich 803 (1979), where it was asserted that the commission had erred in making factual determinations in setting rates, this Court remanded to the circuit court for further findings because the circuit court's preliminary findings were insufficient to support temporary injunctive relief. This Court said that before granting such relief, the circuit court must find probable cause to believe that the commission had erred in setting rates and must be able to state with "preliminary certainty" how the commission had erred. A temporary injunction may not issue unless there is a clear showing of irreparable harm and of likelihood of prevailing on the merits.

---

independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment.' "

We conclude that in the instant case the circuit court had a sufficient factual basis upon which to premise injunctive relief and therefore the circuit court did not err in granting the preliminary injunction. The commission had determined that there was a revenue deficiency, and the commission's technical staff had advised that the proposed rate schedules were fair and reasonable and equitably distributed the revenue increase approved by the commission among the various classes of customers.[14]

The commission's refusal to implement the rate schedules proposed by Consumers without further hearings on the rate schedules after the commission had found a revenue deficiency was a departure from the then established agency practice.[15] This departure would delay for a number of months entry of the commission's final rate order.

The circuit court properly concluded, at the time it granted the injunction, that Consumers would suffer irreparable harm from further delay in the implementation of rates which would generate revenue sufficient to alleviate the $16,514,000 revenue deficiency. The object of the preliminary injunction was to preserve the status quo by averting irreparable injury to either party.[16] The bond to secure a refund protected Consumers' customers

[14] The final commission rate order was substantially similar, indeed almost identical, to Consumers' proposed rate schedules; and, to the extent that the final rate order did not correspond to the proposed schedules, Consumers issued refunds.

[15] The circumstances of this case, which the commission advises are unlikely to recur, concern a commission determination of revenue deficiency prior to, rather than simultaneously with, a determination of new rate schedules, as would occur under present procedures.

[16] See *Niedzialek v Journeymen Barbers, Hairdressers and Cosmetologists' International Union of America, Local 552, AFL,* 331 Mich 296, 300-301; 49 NW2d 273, 275-276 (1951).

and the collection of additional revenue protected Consumers against financial loss.

## C

The dissenting opinion, while acknowledging that this Court in *Michigan Consolidated Gas Co, supra,* approved the granting of a temporary injunction authorizing collection of increased rates pursuant to bond where a utility appealed from a final rate order and established irreparable harm, argues that here the commission had not entered a final rate order before Consumers sought injunctive relief.

The absence of a final rate order does not, in our opinion, prevent the circuit court from exercising general equity jurisdiction to determine whether a temporary injunction should enter to avert irreparable harm. Courts generally require an exhaustion of administrative remedies and a final administrative decision before reviewing agency determinations. There are, however, exceptions to the general rule. Where a party can demonstrate that it would suffer irreparable harm if required to await final administrative action or that the absence of an adequate administrative remedy or remedy at law would cause irreparable harm,[17] a

[17] Courts in other states have exercised general equity jurisdiction and granted temporary injunctions to avert irreparable injury which would result in confiscatory taking of property because of inadequate utility rates.

See, *e.g., Arizona Corporation Comm v Mountain States Telephone & Telegraph Co,* 71 Ariz 404, 409, 412; 228 P2d 749 (1951); *Southern Bell Telephone & Telegraph Co v Georgia Public Service Comm,* 203 Ga 832, 870; 49 SE2d 38 (1948); *Mountain States Telephone & Telegraph Co v Jones,* 75 Idaho 78, 82; 267 P2d 634 (1954); *Joy v Winstead,* 70 Idaho 232, 236; 215 P2d 291 (1950); *Sprague v Biggs,* 390 Ill 537, 548; 62 NE2d 420 (1945) (injunction against insufficient existing rates while rate proceedings pending, after commission denial of common carrier request for increased temporary rates); *Peoples*

court of equity may in the exercise of discretion[18] enter an appropriate protective order.[19]

In sum, while a court may, in deference to an adequate administrative process or for other reasons, *e.g.,* no showing of irreparable harm or of likelihood of prevailing on the merits, withhold injunctive relief, the Court's power or jurisdiction to grant injunctive relief does not depend on whether there is a final administrative order.

### III

The circuit court granted injunctive relief in accordance with the conditions for providing such relief set forth in *Michigan Consolidated Gas Co,* 389 Mich 639-642; 209 NW2d 215-217, and therefore did not err in granting Consumers' request for a temporary injunction.

Affirmed.

FITZGERALD, C.J., and KAVANAGH, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

WILLIAMS, J. *(for reversal).* On September 29, 1969, the Michigan Public Service Commission (MPSC), after 14 months of hearing and delibera-

*Gas Light & Coke Co v Slattery,* 373 Ill 31, 42; 25 NE2d 482 (1939); *South Central Bell Telephone Co v Louisiana Public Service Comm,* 256 La 497, 506; 236 So 2d 813 (1970) (injunction granted before commission determination on interim rate relief); *Southwestern Bell Telephone Co v State,* 202 Okla 291; 214 P2d 715 (1949); *Auclair v Vermont Electric Power Co, Inc,* 133 Vt 22, 24; 329 A2d 641 (1974).

[18] " 'The grant or denial of a temporary injunction is a question of discretion and this Court will not interfere with the trial court's ruling except on a showing of probable abuse.' " *Michigan Consolidated Gas Co, supra,* 389 Mich 643; 209 NW2d 217, quoting *Hiers v Detroit Superintendent of Schools,* 376 Mich 225, 231; 136 NW2d 10, 13 (1965).

[19] See, generally, 3 Davis, Administrative Law, § 21.10; Davis, 1982 Supplement to Administrative Law, ch 21.

tion, determined that Consumers Power Company had a revenue deficiency. However, the MPSC did not simultaneously, as theretofore, approve a rate schedule, because the Attorney General had lawfully requested a hearing on the rate schedule. Consumers thereupon orally requested MPSC to give immediate *ex parte* approval to Consumers' proposed rate schedule under bond subject to any change in the MPSC final rate schedule. MPSC refused, saying it did not have the authority to do so. Consumers thereupon petitioned the Ingham Circuit Court for, and was granted, the authority to implement a proposed rate schedule under bond pending MPSC's final rate determination.

The principal question before this Court is whether the Ingham Circuit Court had jurisdiction to issue an injunctive order implementing the proposed rate structure, either under general equity jurisdiction, as the Ingham Circuit Court held on review, or under 1909 PA 300, § 26; MCL 462.26; MSA 22.45, as the Court of Appeals held on appeal. We hold that the Ingham Circuit Court had no such jurisdiction under either theory. As to § 26, there was not the prerequisite prior rate order for Consumers to complain of, and in any event § 26 does not authorize a court to set rates. As to general equity jurisdiction there is no authority in equity to set utility rates, because setting rates is a legislative function.

The companion question is whether in equity Consumers should be compelled to distribute to former ratepayers the excess rates collected for the six-month period between the circuit court order authorizing collection of the proposed rates and the MPSC final rate determination. Balancing the equities, including the facts that the MPSC had originally, although unlawfully, made its rates

retroactive to the time of the circuit court order, that MPSC had found a rate deficiency prior to the issuance of the circuit court order, that 12 years have elapsed, and that subsequent rates granted by MPSC have taken into account the increased rates collected by Consumers in 1969-1970, we hold that it would not do equity to order a refund at this late date.

Finally, if MPSC does not have statutory authorization, as MPSC avers (and we have not ruled to the contrary) to set rates in advance under bond subject to change where it appears likely the final rate decision will reflect a similar rate, then such a procedure might well merit legislative consideration. Such a procedure would tend to channel utilities into the MPSC's domain where they should find the necessary expertise rather than into the court's jurisdiction where the courts would be encroaching on the legislative function.

## I. FACTS

1. Consumers, July 15, 1968, petitioned MPSC for an electric rate increase.

2. MPSC, September 29, 1969, issued a 65-page opinion finding an income deficiency and ordering (A) a $16,514,000 increase in operating revenues and (B) submission of a proposed rate structure by Consumers.

3. Attorney General, October 1, 1969, submitted a "demand for public hearing" petition to the MPSC in expectation of Consumers' proposed rate schedule.

4. Consumers, October 3, 1969, filed proposed rate schedule and requested in writing that the

proposed rates become immediately effective and orally proposed the rates be collected under bond subject to refund of any revenues collected in excess of final rates approved by MPSC. MPSC refused to take this action, claiming it was "unaware of any statutory authority empowering it to so act".

5. MPSC, October 6, 1969, granted the demand of the Attorney General for a public hearing on October 16 and 17, 1969 to determine the reasonableness of the proposed rate.

6. Consumers, October 6, 1969, filed a complaint in the Ingham Circuit Court seeking injunctive protection, either as an original action in equity, or, in the alternative, as a statutory appeal to make the October 3, 1969 proposed rates effective without further hearing. The complaint alleged:

A. MPSC staff approved the October 3, 1969 proposed rates. MPSC admitted this.

B. *Ex parte* approval of proposed rates following determination of a revenue deficiency was an established practice. MPSC admitted prior commissions had made rate schedules effective without further hearing.

C. Contrary to its established practice, MPSC issued the October 6, 1969 hearing notice, continuing pre-existing rates. MPSC admitted this.

D. Consumers requested its proposed rates be made effective under bond subject to refund pending an order, but MPSC refused. MPSC admitted refusing a *verbal* request because it lacked authority to grant it.

E. A hearing on proposed rates was not required by 1939 PA 3, § 6a; MCL 460.6a; MSA 22.13(6a), nor any other law. MPSC admitted prior commissions had not determined a hearing was required.

F. MPSC's refusal to make the proposed rates effective without further hearing was unlawful and unreasonable and would cause irreparable harm. MPSC denied such refusal was unlawful or unreasonable.

7. Michigan Retailers Association, October 10, 1969, filed petitions to intervene in MPSC hearings and petitions to intervene in Ingham Circuit Court on October 21, 1969.

8. Circuit Judge Salmon, October 21, 1969, issued a preliminary order of injunction authorizing Consumers Power to collect its proposed electric rates effective the following day, ruling

"that the plaintiff will suffer irreparable harm if such rates and schedules were not permitted to become effective immediately because increased rates cannot be made effective retroactively and plaintiff will be forced to continue to supply * * * electric energy to its customers at rates which the defendant [MPSC] has heretofore found * * * to be inadequate and noncompensable by an amount of $16,514,000 annually."

The injunction required Consumers Power to file a $5,000,000 bond guaranteeing the refund in the event that (1) the MPSC ultimately approved electric rates different from those proposed by the utility or (2) the injunction was modified or set aside by the circuit court or an appellate court. Finally, the injunction required Consumers Power to maintain adequate records to permit individual refunds with interest should the occasion arise.

9. Consumers, October 28, 1969, requested resumption as soon as possible of MPSC rate hearings, which had recessed to permit attorneys and experts for the parties to attend the Ingham Circuit Court hearings.

10. MPSC, April 20, 1970, issued an order approving electric rates prospectively with a slightly changed schedule. Between October 22, 1969 and April 20, 1970 Consumers collected $7,762,873 over the pre-existing schedule. Consumers, May 26, 1970, refunded the difference between the MPSC and the Consumers rate schedules with interest of 7.15% leaving a net amount of $6,623,417 in dispute.

11. The Attorney General and City of Wyoming, May 20, 1970, brought an action in Ingham Circuit Court under § 26 appealing the April 20 MPSC rate schedule order claiming, *inter alia,* that the order unlawfully purports to ratify the rates fixed by Judge Salmon for the period of October 22, 1969 through April 19, 1970. Michigan Retailers Association was permitted to intervene on June 5, 1970.

12. Ingham Circuit Judge Hotchkiss, December 14, 1977, entered summary judgment for Consumers, asserting that there was general equity jurisdiction in Judge Salmon, that Consumers had exhausted administrative remedies, that Consumers' action was a "direct action and the court was therefore not limited by the statutory appeal provisions of [MCL 462.26; MSA 22.45]," and that Consumers' complaint did not constitute mandamus against a state officer, because "the court exercised its own authority and jurisdiction."

13. The Court of Appeals unanimously affirmed, holding that the circuit court had statutory appellate jurisdiction to enter the preliminary injunc-

tion under MCL 462.26; MSA 22.45 which autho-
rized the court to "vacate and set aside" any
unlawful or unreasonable order fixing rates. The
Court of Appeals found that "[t]he denial of a
request to place increased rates into effect pending
final approval is an 'order fixing rates.'" 88 Mich
App 633, 639; 278 NW2d 702 (1979). The Court
held that prior to seeking relief in circuit court
Consumers had exhausted its administrative reme-
dies by substantially complying with MCL 460.6a;
MSA 22.13(6a) in petitioning the MPSC for imme-
diate rate increase relief. *Id.,* 639-641. This Court
granted leave to appeal on July 19, 1979. 406 Mich
1010.

## II. ISSUES

The above facts raise the following issues:

A. Whether 1939 PA 3, § 6a; MCL 460.6a; MSA
22.13(6a) authorizes MPSC to grant partial and
immediate rate relief to a utility without notice
and hearing?

B. Whether 1909 PA 300, § 26; MCL 462.26;
MSA 22.45 gives the Ingham Circuit Court juris-
diction under the facts of this case to review the
MPSC refusal to issue an *ex parte* order granting
a temporary rate increase and the October 6, 1969
notice of hearing order and to issue temporary
rates?

C. Whether the Ingham Circuit Court has origi-
nal general equity jurisdiction to establish tempo-
rary utility rates?

D. Whether under the unique facts of this case
customers are entitled to a refund of the difference

between the excess collected under the injunction over the pre-existing rates for the six months between the circuit court's injunction and MPSC's final order.

### III. PARTIAL AND IMMEDIATE RELIEF

The Court of Appeals ultimately decided that the Ingham Circuit Court had statutory appellate authority under § 26 to fix temporary Consumers rates, an issue we will consider in Part IV. The Court held:

"By statute the Legislature has granted the circuit court appellate jurisdiction over any action to vacate and set aside any order fixing rates on the ground that the rates are unreasonable or unlawful. MCL 462.26; MSA 22.45. The denial of a request to place increased rates into effect pending final approval is an 'order fixing rates.' Accord *Mountain States Telephone & Telegraph Co v Arizona Corporation Comm,* 331 F Supp 1167 (D Ariz, 1971). As reasoned by the Arizona district court, 'A "No" answer is just as much rate fixing as an unreasonably low "Yes". *Id.,* p 1170.' "

But, in order for the Court of Appeals to make its § 26 decision, it had to establish that MPSC denied Consumers' request to fix rates. It did so by considering at length § 6a. Let us consider in substantial part the Court of Appeals rationale:

"Appellants contend that Consumers Power, before seeking a court injunction, should have sought immediate relief from the Public Service Commission under § 460.6a of the compiled laws. MCL 460.6a; MSA 22.13(6a). In pertinent part that section provides:

" 'When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission,

pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility make a finding and enter an order granting partial and immediate relief, after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, and after having afforded to such interested parties reasonable opportunity for a full and complete hearing: Provided, That no such finding or order shall be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report * * *.'

\* \* \*

"In this case Consumers Power Company sought interim relief from the Public Service Commission before requesting a court injunction. Following past agency practices, the company did not formally move the commission to exercise its discretion under § 460.6a. The company's 'Filing of Rate Schedules and Request for Approval Thereof,' however, was supported by affidavit. The affidavit showed the schedules were in accord with the commission's earlier order concerning rate deficiencies. It also stated that the distribution of rate increases among consumer classifications was fair and reasonable. As related above, the prayer to put the new schedules into immediate effect was written.

"Under the circumstances here presented, we find this to be substantial compliance with § 460.6a, sufficient to invoke the Public Service Commission's authority to grant immediate relief. The commission's order of October 3 implicitly denied such relief and thereby completed the administrative process. Affected parties were afforded due process at the subsequent injunction hearing." 88 Mich App 639-641.

The Court of Appeals finding that there was "substantial compliance with [MCL 460.6a]" is manifestly erroneous. The language of § 6a is clear and unambiguous as to what is required. These requirements were not substantially met. In fact there was no compliance at all. First, § 6a declares

that the "commission * * * may in its discretion and upon written motion by such utility company make a finding and enter an order granting *partial* and immediate relief". (Emphasis added.) However, Consumers was seeking complete acceptance of its proposed rates. The utility company specifically stated in a brief to the Court of Appeals that it "was not seeking partial and immediate rate relief pursuant to § 6a" when it filed the proposed rate structure. In short, there was no appropriate "motion by such utility" for *"partial* and immediate relief". Second, the MPSC neither directly nor by implication made "a finding and enter[ed] an order granting [or denying] partial and immediate relief". Rather the MPSC, responsive to the request for total relief under bond, said it did not have the authority and gave "notice to the interested parties within the service area to be affected" by issuing the October 6 notice of hearing to set final rates. Third, whether or not MPSC did "enter an order", it did not do so "after first having given notice to the interested parties" for a § 6a hearing. Fourth, § 6a particularly provides against an "order * * * *ex parte"* and, if there were an "order", it would have been *ex parte.*

MPSC correctly observed:

"The commission is a creature of statute, 1939 PA 3, § 1, as amended, MCL 460.1; MSA 22.13(1), without any common-law power, and the warrant for its exercise of authority must be found in a statutory enactment vesting the specific authority exercised. *Huron Portland Cement Co v Public Service Comm,* 351 Mich 255; 88 NW2d 492 (1958); *Sparta Foundry Co v Michigan Public Utilities Comm,* 275 Mich 562; 267 NW 736 (1936)."

That being so, the only two ways MPSC can order rates are under the general rate powers

section, § 6; MCL 460.6; MSA 22.13(6) or under
§ 6a. It is clear that this case is not considering
action under the general rate powers section, be-
cause that was what the October 16 and 17 hear-
ings were for. Consequently MPSC would in the
instant case have acted under § 6a or not at all.
We have already concluded it could not have acted
under § 6a for the reasons stated above. Further-
more, if it could not have issued an order under
§ 6a and did not issue an order under its general
powers until April 20, 1970, there is no order in
this case to establish a basis for action under § 26;
MCL 462.26; MSA 22.45. See Part IV.

IV. APPELLATE JURISDICTION OF CIRCUIT COURT

The Court of Appeals found that Circuit Judge
Salmon under 1909 PA 300, § 26 had jurisdiction
to issue a preliminary injunction establishing a
rate structure, October 21, 1969. In its opinion, the
Court said:

"By its order of October 3, the Public Service Com-
mission denied the utility's request for immediate relief.
* * * [T]he utility's complaint for injunction invoked
the circuit court's appellate jurisdiction to review that
order. The circuit court granted the injunction on
grounds authorized by the statute." 88 Mich App 639.

1909 PA 300, § 26 in pertinent part provides:

"Any * * * party in interest, being *dissatisfied with
any order of the commission fixing any rate* * * * may
within 30 days from the issuance of such order and
notice thereof commence an action in the circuit court
in chancery for the county of Ingham, against the
commission as defendant *to vacate and set aside any
such order* on the ground that the rate or rates * * *

fixed are unlawful or unreasonable * * *." MCL 462.26;
MSA 22.45 (emphasis supplied).

The Court of Appeals rationale above quoted is
not fully clear, as MPSC issued no order fixing
rates on October 3, 1969 (or any other date prior
to the decision of Judge Salmon) denying Consum-
ers' request to make immediately effective Con-
sumers' proposed rates. It is likely, however, that
the appellate court intended to refer to MPSC's
refusal to grant Consumers' request for immediate
effectiveness of the proposed rates and to the
October 6, 1969 notice of hearing granting the
request of the Attorney General for public hear-
ings to review the proposed rate structure. The
Court of Appeals apparently agreed with Consum-
ers that insofar as MPSC had stated it had no
authority to give immediate and *ex parte* effect
under bond to Consumers' proposed rates and
insofar as MPSC had set the public hearings for
October 16 and 17, Consumers' request for immedi-
ate implementation of the proposed rates was
effectively denied on October 6, 1969. See 88 Mich
App 639.

The question before us, therefore, is whether the
Court of Appeals erred in holding that Judge
Salmon's issuance of a temporary injunction had
sufficiently complied with the jurisdiction require-
ments of § 26. Two criteria appear pertinent. First,
was there "any order of the commission fixing any
rate"? Second, if there was such an order does the
language "vacate and set aside any such order"
authorize a temporary injunction fixing a rate
schedule?

### A. Alleged MPSC Order Fixing Rates

As noted, the Court of Appeals makes reference
to an apparently nonexistent or mislabeled order.

It is difficult to base jurisdiction on this. However, the Court of Appeals seems to base its finding of "any order of the commission fixing any rate" on the refusal of MPSC to grant Consumers' request for immediate effectiveness of its rates. We have sufficiently discussed that contention in Part III. There is no order meeting the statutory criterion. Furthermore, we might observe that Consumers' argument goes too far. It would, if carried to its logical conclusion, establish that there was an MPSC order setting rates any time the utility requested a proposed rate increase be put into effect, as they did in this case, and MPSC for whatever reason said it could not put the proposed rate into effect. For example, the utility, the day after it filed its original petition for a rate increase and before any proof was offered, might request MPSC to permit the utility to collect the proposed rates under bond. To say that that was an MPSC rate order permitting the utility to go to court certainly does not make much sense, and there is no evidence that the Legislature contemplated anything like that.

## B. Statutory Authority for Issuance of Temporary Injunction

Even assuming MPSC's refusal to grant Consumers' request for immediate effectiveness of the proposed rates and MPSC's October 6 notice of hearing constituted an order fixing rates for purposes of § 26, the relief granted was outside the scope of the statute. Section 26 permits the utility company to petition the circuit court "to vacate and set aside any such order on the ground that the * * * rates fixed are unlawful or unreasonable". We hold that the language "vacate and set aside any such order" is clear and unambiguous.

*Dussia v Monroe County Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971). The power to vacate unreasonable or unlawful rates is quite separate from the power to grant rates. The Legislature exclusively set up the MPSC, with its special expertise and factfinding powers, to authorize rates. Thus, it is obvious that the language "vacate and set aside any such order" does not authorize the issuance of a temporary injunction fixing a rate schedule. The further question is whether the clause "to make such other order or decree as the court shall decide to be in accordance with the facts and the law" authorizes the setting of utility rates. It is clear that this language authorized the general exercise of equity powers, but that still does not answer the question whether general equity power permits the setting of utility rates. We shall consider that question specifically in Part V. But before doing that let us consider a decision of this Court which has not been modified or overruled.

Our reading of 1909 PA 300, § 26, comports with the decision of this Court in *Michigan Central R Co v Wayne Circuit Judge,* 156 Mich 459, 470; 120 NW 1073 (1909), with respect to 1909 PA 300's predecessor, 1907 PA 312, § 26, using practically the identical language, including: "[T]he circuit courts in chancery are hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the commission * * * and to make such other order or decree as the courts shall decide to be in accordance with the facts and the law." In that case, this Court said:

"We do not construe the provisions of this act to lodge in the courts the power to establish rates. The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If

the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates." Accord, *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 642, 647; 209 NW2d 210 (1973).[1]

In conclusion, we hold that the Court of Appeals erred in finding that statutory appellate jurisdiction under § 26 sustained Circuit Judge Salmon's temporary injunction of October 21, 1969.

## V. GENERAL EQUITY POWER TO ESTABLISH TEMPORARY UTILITY RATES

Consumers placed its chief reliance in petitioning the circuit court to establish its proposed rate schedule on the fact that that court had general equity jurisdiction. Ingham Circuit Judge Salmon's October 21, 1969 preliminary order of injunction implicitly assumes general equity jurisdiction and makes no mention or reliance on 1909 PA 300, § 26. Ingham Circuit Judge Hotchkiss, in his December 14, 1977 opinion determining the legality of the charge and collection of the rates set by Judge Salmon, stated:

"In granting the injunction, the court relied on its general equity jurisdiction. * * *

---

[1] In *Michigan Consolidated Gas* this Court, in a 4-to-3 decision, recognized *Michigan Central R Co* but nonetheless approved the issuance of an injunction to establish temporary rates. However, in that case there was a final order of the commission setting rates, whereas in the case now before us MPSC had not yet issued any order setting rates but was in the very process of hearing what the rates should be. Therefore, in *Consolidated Gas,* the Court was not obliged to consider whether there was "any order of the commission fixing any rate" with which the utility could be dissatisfied, since there clearly was such an order. In the instant case, we, of course, hold there was no such order. In short, *Consolidated Gas* is distinguishable from this case.

"The court treated Consumers' suit as a direct action and the court was therefore not limited by the statutory appeal provision of MCL 462.26. * * * [T]he court exercised its own authority and jurisdiction."

The Court of Appeals noted: "It is unnecessary to decide in this case whether the circuit court had original equity jurisdiction to grant the preliminary injunction at issue." 88 Mich App 638. The Court of Appeals rested its decision on 1909 PA 300, § 26 and 1939 PA 3, § 6a. We have in Parts IV and V held that the Court of Appeals erred in this.

We therefore here address the issue whether the Ingham Circuit Court correctly assumed that original general equity jurisdiction includes the authority to fix utility rates.

Any consideration of whether the Ingham Circuit Court correctly assumed that original equity jurisdiction includes the authority to fix utility rates must begin with the basic proposition that ratemaking is a legislative function. In *City of Niles v Michigan Gas & Electric Co,* 273 Mich 255, 263; 262 NW 900 (1935), this Court said:

"Primarily the authority to fix rates for public utilities is a governmental power vested in the Legislature."

The issue in that case was what rate fixing authority was granted by the Legislature to the municipality.

The Legislature has over a period of years properly delegated its rate fixing power to an executive agency, most recently MPSC. It is undisputed that the Legislature has the authority, through its police powers, to regulate business affected with public use. See *Michigan State Telephone Co v Michigan Railroad Comm,* 193 Mich 515; 161 NW 240 (1916). The Legislature initially delegated this

authority to the Railroad Commission, 1907 PA 312, which was expanded and replaced by the Public Utilities Commission, 1919 PA 419, which in turn was replaced by the MPSC. 1939 PA 3; MCL 460.1 *et seq.;* MSA 22.13(1) *et seq.*[2] The authority to set rates and rate structure, therefore, has always been a legislative function properly delegated to an administrative agency. The courts have neither the authority nor the expertise to determine what rate structure most equitably spreads a rate increase among commercial, industrial, household and other users.

The Legislature has delegated its rate setting power to MPSC with considerable particularity. Not only is the general rate setting function described but provision is made for a method of seeking partial and immediate relief pending final order (1939 PA 3, § 6a) and for general appeal in case of dissatisfaction (1909 PA 300, § 26). Subsequent to this case the Legislature has set a goal for MPSC to conclude its deliberations within nine months. 1972 PA 300; MCL 460.6a(3); MSA 22.13(6a)(3).

We have recognized that none of this legislative delegation contemplates any judicial rate setting. *Michigan Central R Co v Wayne Circuit Judge, supra;* recently reaffirmed in *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 642, 647; 209 NW2d 210 (1973).

It is abundantly clear that the Legislature has carefully circumscribed its rate setting power, confining it to the MPSC and excluding judicial rate setting. Consequently, we hold that if Ingham Circuit Judge Hotchkiss intended to rule that

---

[2] For a national review of the history of public utility law see Goddard, *The Evolution and Devolution of Public Utility Law,* 32 Mich L Rev 577 (1934).

Circuit Judge Salmon had general equity jurisdiction to fix rates, he was in error. Such a holding would sanction the breach of constitutional separation of powers, authorizing the judicial branch to exercise a function belonging to the Legislature. Const 1963, art 3, § 2.

## VI. GENERAL TELEPHONE CASE

Ingham Circuit Judge Hotchkiss, in his December 14, 1977 opinion, speaking of Ingham Circuit Judge Salmon's rate setting injunction, observed:

"In granting the injunction, the court relied on its general equity jurisdiction. See *General Telephone Co of Michigan v Public Service Comm,* 341 Mich 620 [67 NW2d 882] (1954)."

In *General Telephone Co,* the company appealed to the Ingham Circuit Court a rate order granting only a partial increase. That court took additional testimony, which it transmitted to MPSC. MPSC refused to consider the additional testimony and would not modify its order. The court thereupon considered MPSC's order and held the rates were unreasonable, unlawful and confiscatory. The court then remanded the matter to MPSC to fix just rates and pending MPSC action authorized the utility to collect rates not in excess of the rates it had requested MPSC to approve under a refund bond. This Court observed:

*"The court by its decree did not establish a rate,* but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond * * *." 341 Mich 620, 632 (emphasis supplied).

The *General Telephone Co* case was relied on in *Michigan Consolidated Gas Co v Public Service Comm, supra.* MPSC granted part of a rate increase requested by the utility. The Ingham Circuit Court noted that MPSC had made mistakes of law in computing the rate, remanded the matter to MPSC for reconsideration, and permitted the utility to collect the whole requested increase under bond subject to refund pending final order of MPSC. The circuit court relied on the *General Telephone Co* case (389 Mich 624, 633). The Court of Appeals in review (25 Mich App 512, 517; 181 NW2d 596 [1970]), as did this Court (389 Mich 624, 642-643), also relied on the *General Telephone Co* theory that the circuit court "did not establish a rate, but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond".

To begin with, the *General Telephone Co* and *Michigan Consolidated Gas Co* cases are critically distinguishable from the instant case in that in each of those cases MPSC had issued a rate order that the circuit court had under review. In the instant case, MPSC had not issued a rate order. Otherwise the cases are substantially similar, although not on all fours.

The issue raised by these two cases is whether there is a real difference, on the one hand, between the circuit court permitting the utility to collect its requested rates not approved by MPSC under bond subject to refund pending final MPSC decision and, on the other, setting a rate. The practical result pending MPSC's final decision is that the utility collects at a higher rate allowed by the court rather than the MPSC's original rate. Furthermore, the collection begins at the time of

the court order rather than the final MPSC deci-
sion. So from the point of view of these two factors
the court is in reality setting rates.

On the other side of the picture, the court's
order is temporary and subject to correction by the
final order of MPSC. In addition the collections are
under bond and subject to refund. However, the
collections, as noted, date from the time of the
court order rather than MPSC's final order.

Permitting such a court order preserves the
utility from unrecoverable loss from the time of
the court order to the time of the final MPSC rate
order if MPSC rules in its favor. This has equita-
ble appeal. On the other hand, ratepayers are put
to inconvenience and perhaps financial difficulty
that subsequent repayment may not fully compen-
sate. In addition, repayment may not find some
ratepayers.

On balance there may well be instances where
such a system would be in the public interest.
However, it is difficult to say that calling such a
procedure not rate fixing is anything more than an
exercise in semantics. It appears to us that the
court is really setting rates. If it is setting rates,
then it is, without license, intruding on the Legis-
lature's power and function to set rates, and this
Court should not permit it. This is particularly so
because the courts lack the special expertise of the
MPSC in the subject matter, as we have often
remarked.

We have held that the courts do not have gen-
eral equity power to set rates and that the actions
in *General Telephone Co* and *Michigan Consoli-
dated Gas Co* do invalidly set rates. Furthermore,
it is worth noting that during the administrative
proceedings, when the issue of whether the MPSC
could or should have ordered immediate imple-

mentation of Consumers' proposed rate structure under bond pending final rate determination was first raised and could have been effectively dealt with, the MPSC failed to act, because, as it stated in the answer to the October 6 complaint, "it [was] unaware of any statutory authority empowering it to so act". However, we are mindful that there is a serious equitable problem of delay both in increasing and decreasing rates. In our opinion, this is a proper subject for consideration by the Legislature which has already tried to fashion a solution by establishing a partial and immediate rate request (§ 6a) and setting a nine-month time for MPSC action [1972 PA 300; MCL 460.6a(3); MSA 22.13(6a)(3)]. The Legislature in setting up a suitable procedure could also provide prudent safeguards as to when the procedure should be used.

## VII. REMEDY

Having determined that the Court of Appeals and Judge Hotchkiss erred in holding Judge Salmon had general equity or statutory authority to set rates, we must now consider whether it is equitable to allow appellants' request that Consumers refund from October 22, 1969, the effective date of Judge Salmon's order, to the April 20, 1970 date of the MPSC's final rate order the revenues collected over and above the prior rates.

Weighing the equities we must begin with the fact favoring appellants that technically Judge Salmon acted unlawfully in permitting the higher rates to be collected. But, on the other hand, we must consider (1) that MPSC had already determined that Consumers was entitled to higher revenues, (2) that MPSC in its final rate order of April 20, 1970 purported to make the new higher rates

retroactive to October 22, 1969 (of course, this was contrary to law but it does show MPSC's opinion as to the equities), and (3) that this was the first time MPSC had not simultaneously granted new rates with the finding of revenue shortage.

Balancing these equities, we are compelled to conclude that the appellants were not unjustly disadvantaged economically. Furthermore, we must recognize that all this happened 12 years ago and it is not too easy to put Humpty Dumpty together again.

The cost and effort of distribution would be altogether disproportionate to the advantage of relatively small checks to subscribers. The excess collections were in the amount of approximately $6.6 million. There were over a million electric ratepayers. As a consequence, the average check without interest would be less than $6.50. Furthermore, because of the mobility of our population, many subscribers would not be found, despite the special records which were kept, and others only at excessive cost.

In sum, we hold that, balancing the equities, we do not find a persuasive case to order the requested refund. *"Lex neminem cogit ad vana seu inutilia peragenda."* The law compels no one to do vain or useless things. Black's Law Dictionary (4th rev ed), pp 1056-1057. See *Sir Anthony Main's Case,* 3 Coke, Part 5, pp 20b, 21a (1596). *Cf.* Chases's Blackstone Commentaries (3d ed, 1892), pp 701, 1071. Michigan has long recognized that "the law does not require the doing of a useless thing". *Friedman v Winshall,* 343 Mich 647, 654; 73 NW2d 248 (1955). To order a refund at this late date would be a vain and useless act. The order would

result in prohibitive costs and most likely could not be effectively carried out.

## Conclusion

We hold that the Court of Appeals and the circuit court erred for different reasons in finding Judge Salmon properly permitted collection of revenues under Consumers' proposed rates, because there is neither statutory nor general equity jurisdiction and power in the circuit court to set utility rates. We further hold that, balancing the equities, the refund is not in order.

Costs to appellants, since they prevailed at law.

The late Justice Blair Moody, Jr., took no part in the decision of this case.